**MATTHIAS MATTHEW, Appellant/Defendant**
**v.**
**DERMONT A. P. HERMAN, Appellee/Plaintiff**

S. Ct. Civ. No. 2009-0074

Supreme Court of the Virgin Islands

May 15, 2012

AMELIA B. JOSEPH, ESQ., St. Croix, USVI, *Attorney for Appellant.*

ESZART A. WYNTER, SR., ESQ., Law Offices of Eszart A. Wynter, Sr., P.C., St. Croix, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(May 15, 2012)

CABRET, *Associate Justice.* Appellee Dermont Herman sued Appellant Matthias Matthew in the Superior Court of the Virgin Islands to recover

675

damages based on two common law causes of action, alienation of affection and criminal conversation, revolving around Matthew's affair with Herman's wife. The jury awarded Herman $125,000 and costs. Matthew now appeals, arguing first that the common law causes of action on which the lawsuit was based should not be recognized in the Virgin Islands, and, alternatively, that Herman failed to set out sufficient proof for the jury to find in his favor. For the reasons which follow, we reverse the Superior Court's judgment and remand the case with instructions to dismiss the complaint.

## I. FACTS AND PROCEDURAL HISTORY

In his verified complaint, Herman alleged that in 1984 he married Francisca Herman. Thereafter, the couple had two children and lived together as a family unit. Herman went on to accuse Matthew, his neighbor, of intentionally seducing Francisca through a campaign of gifts and sexual attention which caused Herman and Francisca to become estranged. In the complaint, Herman set out this accusation in two counts, one for alienation of affection, a common law tort which imposes liability against a third person who intentionally causes the plaintiff's spouse to lose his or her affection for the plaintiff, and one for criminal conversation, another common law tort which imposes liability against a third person who has sexual relations with the plaintiff's spouse. *See* RESTATEMENT (SECOND) OF TORTS §§ 683, 685 (1977). During the timeframe of the alleged affair, Matthew was married to Veronon Matthew.

At trial, both of the Hermans and both of the Matthews testified. Francisca and Matthew both testified that they were only friends and had not been involved in a relationship with one another. Herman and Veronon both testified that they believed, based on personal observation or on what Matthew had admitted, that a relationship existed between Matthew and Francisa. The jury believed Herman and Veronon, and returned a verdict for $75,000 on the alienation of affection count and $50,000 on the criminal conversation count. The Superior Court entered a judgment based on the jury's verdict on July 17, 2009. Matthew filed a timely notice of appeal on August 4, 2009. *See* V.I.S.CT.R. 5(a)(1) (setting a thirty day time limit to file a notice of appeal from the entry of the judgment).

## II. JURISDICTION

We have jurisdiction over this civil appeal pursuant to title 4, section 32(a) of the Virgin Islands Code, which provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." 4 V.I.C. § 32(a). The July 17, 2009 judgment based the jury's verdict disposes of all of the claims submitted to the Superior Court for adjudication, and therefore constitutes a final judgment from which an appeal lies. *See, e.g., Bryant v. People*, 53 V.I. 395, 401 (V.I. 2010) (final judgment is one which ends the litigation on the merits and which disposes of the whole subject of the litigation).

## III. DISCUSSION

In support of his claim that the Superior Court erred, Matthew contends, first, that the Virgin Islands should not recognize the torts of alienation of affection and criminal conversation and, second, that Herman failed to provide sufficient proof to prove each element of the torts by a preponderance of the evidence. Because we find the first issue dispositive, we do not address the second. However, before addressing whether we should recognize the torts of alienation of affection and criminal conversation, we must first determine whether, as Herman argues, Matthew failed to preserve this issue for appellate review.

### A. Matthew successfully preserved his argument that the Virgin Islands should not recognize the torts of alienation of affection and criminal conversation.

On the morning of trial, Matthew made an oral motion to dismiss the complaint, alleging that the Superior Court should not recognize, or should abolish, the torts of alienation of affection and criminal conversation. The issue was raised again as a motion for a judgment as a matter of law at the close of all evidence. The Superior Court took the motion under advisement and did not rule at either time.

■ Herman argues in his brief that the motion to dismiss on the morning of trial, which he characterizes as coming under Federal Rule of

Civil Procedure 12,[1] was untimely and was thus inadequate to preserve the issue for appeal. However, Rule 12 specifically permits a motion to dismiss for failure to state a claim to be raised "at trial." FED. R. CIV. P. 12(h)(2)(C). Therefore, because Matthew raised his motion to dismiss for failure to state a claim at trial, the issue was properly presented to the Superior Court and preserved for review on appeal. *See Weaver v. Bowers*, 657 F.2d 1356, 1360 (3d Cir. 1981) ("While authority is sparse as to what constitutes presenting a defense 'at' the trial, it would appear that the defense must be presented so that the court may consider whether there has been a failure to state a claim before disposition on the merits."); *see also Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 400 (4th Cir. 2011) (holding that a denied motion to dismiss at trial under Rule 12(h)(2)(C) was sufficient to preserve the issue of failure to state a claim for appeal where motion was made "before the district court disposed of the merits of the . . . complaint").[2]

## B. The Virgin Islands does not recognize alienation of affection or criminal conversation with a spouse. Therefore, the Superior Court erred in refusing to grant Matthew's motion to dismiss.

Matthew first argues that alienation of affection and criminal conversation with a spouse should not be recognized causes of action in the Virgin Islands. On the other hand, Herman argues that, because the causes of action are found in both the First and Second Restatements of Torts, the Virgin Islands should recognize both. Because determining whether Virgin Islands law gives rise to these two specific causes of action is a question of law, we exercise plenary

Both the First and Second Restatements of Torts include actions for alienation of affection, at section 683, and criminal conversation, at section 685.[3] In both of the Restatements, the substantive requirements of

---

[1] The Federal Rules of Civil Procedure apply in the Superior Court to the extent they are not inconsistent with any local statute or other Superior Court Rule. See SUPER. CT. R. 7.

[2] Because the motion to dismiss was sufficient to preserve the issue for appeal, we do not address whether the motion for judgment as a matter of law made at the close of evidence would have been sufficient.

[3] n The current third Restatement of Torts has not published sections intended to cover or replace sections 683 and 685 from the second Restatement. See Restatement (Third) of Torts: Liability for Physical and Emotional Harm intro. (2005) (stating that the current sections of

the actions are the same. For alienation of affection, the plaintiff must prove that the defendant knowingly and intentionally sought to alienate the affections of the plaintiff's spouse and in doing so harmed one of the plaintiff's legally protected marital interests.[4] *See* RESTATEMENT (SECOND) OF TORTS § 683; RESTATEMENT (FIRST) OF TORTS § 683 (1938). On the other hand, criminal conversation merely requires that the plaintiff show that the defendant had sexual relations with the plaintiff's spouse. *See* RESTATEMENT (SECOND) OF TORTS § 685; RESTATEMENT (FIRST) OF TORTS § 685.

■ ■ Herman argues that 1 V.I.C. § 4 specifically incorporates the Restatements into the Virgin Islands Code and thus the Virgin Islands courts are required to recognize both causes of action. Section 4 of title 1 states, in its entirety, that

> The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

Recently, in *Banks v. International Rental & Leasing Corp.*, 55 V.I. 967, 976 (V.I. 2011), we answered a certified question from the United States Court of Appeals for the Third Circuit asking whether this Court, based on section 4, would apply the Second or Third Restatement to strict liability product defect claims brought against the lessors of chattels. In answering that question, we provided our first substantive review of section 4 and how it interacts with the formation of common law in the Virgin Islands. Specifically, we were required to determine whether section 4 mandates that

> this Court is bound to follow the most recent version of the Restatement approved by the American Law Institute whenever it is required to decide an issue of first impression, or whether, like other courts of

---

the Restatement Third are only intended to cover Divisions two and three of the Restatement Second, which does not include section 683 and 685).

[4] Legally protected marital interests are defined as the society and companionship of the spouse, exclusive sexual relations with the spouse, or financial support and/or support in the home from the spouse. See RESTATEMENT (SECOND) OF TORTS § 683 cmt. c; RESTATEMENT (FIRST) OF TORTS § 683 cmt. b.

last resort, this Court possesses the inherent power to shape the common law in the Virgin Islands.

*Id.* After carefully reviewing the history of section 4 and the history and purpose of the formation of this Court, we concluded that

> 1 V.I.C. § 4 does not incorporate all of the Restatement provisions as if they were actual statutory text; nor does it delegate to the American Law Institute the authority to enact changes in the law of the Virgin Islands in all of the areas covered by the Restatements. *See Dunn v. HOVIC*, 1 F.3d 1371, 1392, 28 V.I. 467 (3d Cir. 1993) (Alito, J., concurring). Rather, we hold that, because our own decisions constitute "local law" within the meaning of section 4 — and, unless found to be manifestly erroneous by the Third Circuit, are binding on all other courts applying Virgin Islands local law — we therefore possess the discretion to decline to follow the most recent Restatement provision.

*Id.* at 980. With that in mind, we then considered three non-dispositive factors to guide us in our determination of whether we should adopt the Restatement approach. *Id.* at 981-84.

First, we reviewed the case law of the Virgin Islands to determine whether the challenged Restatement provision had been judicially accepted and used in the Virgin Islands. *Id.* at 981. We noted that when a doctrine gains "widespread acceptance" that there are "definite burden[s] associated" with rejecting it, as to do so would "disrupt the state of the law in the Virgin Islands." *Id.* at 983. Therefore, where a Restatement provision has received widespread acceptance in the Virgin Islands, that reliance upon and use of the provision was " 'entitled to great respect.' " *Id.* (quoting *People v. Todmann*, 53 V.I. 431, 438 n.6 (V.I. 2010)). Next, we turned to whether the majority of courts from other jurisdictions endorse the position taken by the Restatement provision. We noted that "section 4 of title 1 'is impressive evidence that the Virgin Islands [L]egislature intends [majority] rule to govern in the absence of specific legislation.' " *Id.* at 983-84 (quoting *Robles v. Hovensa, L.L.C.*, 49 V.I. 491, 498-99 (V.I. 2008)). However, we did not follow the majority blindly and cautioned that the majority rule factor, while important, was not dispositive. *Id.* Finally, we turned to the third, and most important, factor: an examination of whether the Restatement approach is the soundest rule for the Virgin Islands. *Id.* at 984. Applying those three factors in *Banks*,

we recognized that the Second Restatement's approach, at least as narrowly construed by the District Court of the Virgin Islands in a previous opinion, which did not permit a strict products liability suit against the lessors of chattels, had gained widespread acceptance in the courts of the Virgin Islands. Under that approach, those individuals that sold chattels to third parties as part of their business could be held strictly liable for product defects, but those that leased the same chattels to third parties could not. Despite the widespread acceptance in the Virgin Islands of the District Court's approach, we noted that the same approach had been rejected by the majority of courts and by the American Law Institute itself in the Third Restatement. Furthermore, we found that the Third Restatement's approach was the sounder rule. Specifically, we noted that there was no discernable distinction between a seller and a lessor of chattels, both are in the same position to protect consumers from potential product defects. Therefore, despite the great respect given to Restatement provisions that have gained widespread acceptance, we rejected the reading of the Second Restatement from the District Court and permitted a strict liability product defect suit to go forward against a lessor of chattels. *Id.*

Following the release of *Banks*, we directed the parties to submit supplemental briefs addressing the factors specified in that decision and how they would impact our decision on appeal, and to address the effect of the now-repealed 5 V.I.C. § 856(a)(2) — an evidentiary statute concerning the testimonial privilege of spouses in certain situations that was in force at the time of the underlying events and which stated that "[n]either spouse may claim such a privilege . . . in an action for damages for the alienation of affections of the other, or for criminal conversation with the other" — on our authority to consider Matthew's argument that the Virgin Islands do not recognize the torts of alienation of affection and criminal conversation. *See Matthew v. Herman*, S. Ct. Civ. No. 2009-0074, slip op. at 1-2 (V.I. Mar. 2, 2012). In his supplemental brief, Herman concedes that the *Banks* factors all weigh in favor of refusing to recognize the torts of alienation of affection and criminal conversation and that, following the repeal of section 856(a)(2), the Virgin Islands should no longer recognize these torts. However, Herman argues that, prior to the repeal of section 856(a)(2) and thus during the pendency of this case at trial, the evidentiary section evidenced a legislative recognition of the torts, and thus we should only refuse to recognize the

torts prospectively while affirming the judgment in the instant case. Nevertheless, before we address the impact of section 856(a)(2), we will consider each of the factors identified in *Banks*, because the parties cannot stipulate to the law, especially in a situation such as this where the decision may impact other pending or future cases. Accordingly, we turn now to how the *Banks* framework affects the case at hand.

First, we note that the torts of alienation of affection and criminal conversation, the socalled "amatory torts," have never been cited to or used by any court in the Virgin Islands. Our research has not disclosed a single opinion written in the Virgin Islands to ever cite to sections 683 or 685 of either the First or Second Restatement of Torts. Thus, unlike the circumstances in *Banks*, neither section has received "widespread acceptance" so as to require great deference to the doctrines contained therein.

Furthermore, the torts of alienation of affection and criminal conversation have been abolished in the vast majority of American jurisdictions. *See Doe v. Doe*, 358 Md. 113, 747 A.2d 617, 622 (Md. 2000) ("Beginning in the 1930's, public resentment began to grow against criminal conversation as well as other 'amatory' actions, such as alienation of affections and breach of promise to marry. This resentment led to legislative reform, with the enactment of 'Heart Balm Acts' throughout the country. In 1935 Indiana was the first state to enact such a law, abolishing 'all civil causes of action for breach of promise to marry, for alienation of affections, [and] for criminal conversation.' Ch. 208 of the Indiana Acts of 1935, § 1, presently codified as Indiana Code Annotated § 34-12-2-1 (1999). The majority of states soon followed, abolishing amatory torts either by statute or by judicial decision."); *Weaver v. Union Carbide Corp.*, 180 W. Va. 556, 378 S.E.2d 105, 108 (W.Va. 1989) ("A majority of jurisdictions, like West Virginia, have abolished the tort of alienation of affections either by statute or judicial decision."); *see also Strock v. Pressnell*, 38 Ohio St. 3d 207, 527 N.E.2d 1235, 1240 & n.6 (Ohio 1988) (collecting cases and noting that "[s]ince the 1930s, more than half of the states have abolished or severely limited actions for alienation of affections and/or criminal conversation, either by statute or judicial decision."); *Veeder v. Kennedy*, 1999 SD 23, 589 N.W.2d 610, 614 & n.6 (S.D. 1999) ("Alienation of affections remains a legitimate cause of action in nine states."); 41 C.J.S. *Husband and Wife* § 248 ("The cause of action for criminal conversation is

generally not looked upon with favor and may no longer be brought in a majority of jurisdictions.") (footnotes omitted). The overwhelming majority rule, then, is against the adoption of the amatory torts.

Finally, we agree with those courts that the refusal to recognize the amatory torts is the sounder rule. The reasons given for abolishing the amatory torts differ from jurisdiction to jurisdiction, but generally the emphasized concerns are (1) the torts were originally founded on the idea that wives were property of their husbands, (2) the torts have destructive results on existing marriages, and (3) the courts are unable to adequately valuate and address the harms caused by adulterous behavior.[5] *Compare Helsel v. Noellsch*, 107 S.W.3d 231, 232 (Mo. 2003) ("There are many persuasive reasons for abolishing the tort of alienation of affection. The tort is grounded in antiquated concepts of property interests in a spouse, is presently based upon the faulty assumption that it preserves marriages, and is inconsistent with this Court's decision in *Thomas v. Siddiqui*, [869 S.W.2d 740, 743 (Mo. 1994)] wherein this Court abolished the closely related common law tort of criminal conversation."); *with Weaver*, 378 S.E.2d at 108 ("This movement toward abolition is defended for a

---

[5] Prosser and Keeton have written extensively on the abolition of the amatory torts:

> Those actions for interference with domestic relations which carry an accusation of sexual misbehavior — that is to say, criminal conversation, seduction, and to some extent alienation of affections — have been peculiarly susceptible to abuse. Together with the action for breach of promise to marry, it is notorious that they have afforded a fertile field for blackmail and extortion by means of manufactured suits in which the threat of publicity is used to force a settlement. There is good reason to believe that even genuine actions of this type are brought more frequently than not with purely mercenary or vindictive motives; that it is impossible to compensate for such damage with what has derisively been called "heart balm;" that people of any decent instincts do not bring an action which merely adds to the family disgrace; and that no preventive purpose is served, since such torts seldom are committed with deliberate plan. Added to this is the increasing recognition that each spouse is an autonomous human being, that neither is the property of the other, and that a home so easily broken is not worth maintaining.
>
> The result of all this has been a considerable attack upon the actions named. . . . [A] clear majority of states have now either abolished one or both claims or have narrowed them to insignificance. . . . The trend against such actions has moved slowly, but in the light of increased emphasis in our society on personal choice, the decriminalization of sexual activities in many states, and skepticism about the role of law in protecting feelings and enforcing highly personal morality, it seems doubtful that the trend will be reversed.

W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 124, at 929-30 (5th ed. 1984) (footnotes omitted).

variety of reasons. Possibly the most widely cited reason is the potential for blackmail and extortion between spouses. Another is that the court system is ill-equipped to fairly and objectively assess the loss. Finally, alienation of affections is frequently attacked for the reason that it resembles a 'forced sale' of one spouse's affections . . . . These reasons reflect the consensus that marital harmony is best served by judicial noninvolvement."). For the same reasons set out by these courts, we conclude that the refusal to recognize the amatory torts is the sounder rule.

To summarize, then, the amatory torts, as set out in the Restatements, have not gained widespread acceptance in the Virgin Islands, indeed they have never been utilized at all. Additionally, the overwhelming majority rule has been in favor of abandoning the amatory torts because they are based on antiquated concepts of women as property and are destructive to existing marriages. Accordingly, all of the factors identified in Banks militate against the adoption of the causes of action reflected in sections 683 and 685 of the First and Second Restatements of Torts.

■ The only remaining question, then, is what impact former 5 V.I.C. § 856(a)(2), and its subsequent repeal, have on this Court's authority to refuse to recognize the amatory torts. Herman argues that this history demonstrates a legislative recognition of the amatory torts which limits this Court's authority to refuse to acknowledge their viability. However, section 856(a)(2) concerned only the spousal testimonial privilege and did not establish the elements of any tort or the damages available for the commission of any such actions. In circumstances where the legislature merely adverts to a tort but does not expressly establish a cause of action, courts routinely find that the courts' common law authority to set out the elements, or even abolish, the tort remains unaffected. *See Thomas v. Siddiqui*, 869 S.W.2d 740, 741-42 (Mo. 1994) ("Citing two [Missouri] statutes, Thomas contends that criminal conversation is a statutorily approved cause of action. [One such statute] lists eight causes of action — including criminal conversation — where a court is not required to credit a defendant for advance payment of punitive damages. [A second statute] provides a two-year statute of limitations for nine causes of action, including criminal conversation. Contrary to Thomas'[s] argument, these statutes do not make criminal conversation a statutory tort. These statutes merely acknowledge the existence of a common law action for criminal conversation . . . . This Court now abolishes the tort of criminal

conversation in Missouri and reverses the judgment as to criminal conversation."). *See also Gilbert v. Barkes*, 987 S.W.2d 772, 775 (Ky. 1999) ("We find no merit in the . . . argument that the General Assembly affirms a common law cause of action . . . by placing a statute of limitations upon it."). Accordingly, we find the fact that former section 856(a)(2) — an evidentiary statute rather than a statute codifying substantive law — obliquely mentioned the amatory torts and the fact that it was subsequently repealed have no effect on this Court's authority to determine whether the amatory torts will be recognized in the Virgin Islands.

■ Therefore, we will follow the majority of states and decline to recognize the amatory torts of criminal conversation and alienation of affection. Accordingly, the Superior Court erred by failing to grant Matthew's motion to dismiss the complaint and thus we vacate the Superior Court's judgment and remand with instructions to dismiss the complaint.

## IV. CONCLUSION

No court in the Virgin Islands has ever previously recognized an action based on sections 683 or 685 of the First or Second Restatements of Torts. Furthermore, the nationwide trend has overwhelmingly been to abolish or refuse to recognize the amatory torts. Finally, the amatory torts are based on antiquated notions of a wife as the husband's property and are otherwise in tension with the public policy of the Virgin Islands because they have a destructive effect on existing marriages. Therefore, notwithstanding the fact that the amatory torts were included in the First and Second Restatements of Torts, the Superior Court erred by refusing to grant Matthew's motion to dismiss for failure to state a claim. We vacate the Superior Court's July 17, 2009 judgment and remand with instructions to dismiss the complaint.