# CARL SIMON, Appellant/Plaintiff
## v.
# MICHAEL A. JOSEPH, Appellee/Defendant

S. Ct. Civil No. 2012-0011
Supreme Court of the Virgin Islands
September 11, 2013

CARL SIMON, St. Croix, USVI, *Pro se*[1].

SWAN, *Associate Justice*; HODGE, *Designated Justice*; and HOLLAR, Designated Justice.[2]

## OPINION OF THE COURT

(September 11, 2013)

HOLLAR, *Designated Justice*. Appellant Carl Simon, a *pro se* prisoner, appeals from the Superior Court's January 11, 2012 Opinion and Order, which dismissed, with prejudice, his legal malpractice claim against his former court-appointed attorney, Michael A. Joseph, Esq. For the reasons that follow, we vacate the January 11, 2012 Opinion and Order, and direct the Superior Court to dismiss the complaint without prejudice because it is not ripe.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

On January 23, 1995, Simon was tried in the Superior Court[3] for first-degree murder, robbery in the first-degree, and burglary in the third degree. The charges stemmed from an incident that occurred in September 1993, when Simon, James Roach, and a third unidentified individual burglarized a house on St. John. During the burglary, Elroy Connor and Daniel Ezekiel arrived at the house, leading to an altercation that resulted in Ezekiel's death. *Simon v. Gov't of the V.I.*, 47 V.I. 3, 6 (V.I. Terr. Ct. 2002).

The Superior Court appointed Augustin Ayala, Esq., an attorney employed by the Office of the Territorial Public Defender, to represent

---

[1] Although he appeared in the Superior Court proceedings, Appellee Michael A. Joseph, Esq., has not filed an appellate brief or otherwise participated in this appeal.

[2] Chief Justice Rhys S. Hodge and Associate Justice Maria M. Cabret have been recused from this matter. The Honorable Verne A. Hodge and the Honorable Brenda J. Hollar, retired judges of the Superior Court, sit in their place by designation pursuant to title 4, section 24(a) of the Virgin Islands Code.

[3] Before October 29, 2004, the Superior Court of the Virgin Islands had been known as the Territorial Court of the Virgin Islands. Nevertheless, for convenience this opinion refers to the former Territorial Court as the Superior Court. *See* Act No. 6687, § 1(b) (V.I. Reg. Sess. 2004) (amending 4 V.I.C. § 2 by substituting "Superior" in place of "Territorial" in the name of courts of local jurisdiction in the U.S. Virgin Islands, effective October 29, 2004).

Simon at the trial level. Simon repeatedly moved for appointment of a different attorney on grounds that Ayala would not return his calls or visit him, and Ayala responded by moving to withdraw as counsel. The Superior Court, however, declined to relieve Ayala of the representation. During trial, Ayala did not give an opening statement, call any witnesses, or object to the closure of the courtroom during closing arguments and jury instructions. *Simon v. Gov't of the V.I.*, 679 F.3d 109, 112, 56 V.I. 990 (3d Cir. 2012).

At trial, Roach — who had already been convicted of first-degree murder in an earlier trial in the District Court[4] — testified against Simon. Even though Roach testified at his own trial that he never even knew Simon, he capitulated when called as a prosecution witness, claiming to have committed perjury during his trial. When asked to explain why he perjured himself, Roach stated that he now desired to testify on behalf of the government because he believed Simon was going to kill him. The prosecution also elicited testimony that the local government promised to protect him, and that he voluntarily requested solitary confinement due to the threats to his life. At no point did Ayala object to this line of questioning. Roach also testified that he never received promises of a reduced sentence from the government in exchange for his testimony against Simon. *Id.*

Ultimately, the jury found Simon guilty of first-degree murder, first-degree robbery, and third-degree burglary. *Simon*, 47 V.I. at 6. On January 30, 1995, shortly before sentencing, Simon filed a *pro se* petition

---

[4] Prior to January 1, 1994, the Superior Court lacked jurisdiction to hear first-degree murder cases, and such matters were tried in the District Court. *See* Former 4 V.I.C. § 76(b) (1993). As has been previously summarized,

> In 1994, the Revised Organic Act of 1954 had been implemented to include the sweeping 1984 Amendments, which authorized the local legislature to confer expanded jurisdiction on the [Superior] Court. The 1984 Amendments were not self-executing.... Thus, local legislation, effective January 1, 1994, codified the transfer of original jurisdiction for all criminal matters, subject to concurrent jurisdiction with the District Court, to the [Superior] Court.

*People v. Dowdye*, 48 V.I. 45, 64-65 (V.I. Super. Ct. 2006); *see also Browne v. People*, 50 V.I. 241, 255 n.16 (V.I. 2008).

In the two pending habeas corpus appeals, Simon alleges that this change in the law should not operate retroactively, and that he, like Roach, should have been tried in the District Court because Ezekiel's death occurred in September 1993. Since the issue is not before this Court in this legal malpractice appeal, we express no opinion as to its merits.

for writ of habeas corpus, (J.A. 11), which alleged that Ayala provided him with ineffective assistance of counsel. On February 27, 1995, Simon also filed a direct appeal of his convictions to the Appellate Division of the District Court. *Simon*, 679 F.3d at 112. However, on August 11, 1995, the Office of the Territorial Public Defender moved to withdraw as counsel because — among other things — Simon possessed a possible ineffective assistance of counsel claim against Ayala.

While Simon's habeas petition and the Public Defender's motion to withdraw were pending, Roach and the United States Attorney filed, as part of Roach's District Court case, a stipulation to vacate Roach's first-degree murder conviction and only impose a sentence for second-degree murder. On June 12, 1996, the United States Attorney filed a motion for reduction of sentence, premised on the fact that Roach had provided substantial assistance by testifying against Simon in the Superior Court. That same day, the District Court sentenced Roach to twenty years imprisonment as a punishment for second-degree murder.[5] *Id.*

The Appellate Division granted the Public Defender's motion to withdraw as counsel on August 8, 1996, and Joseph entered his appearance as Simon's new appellate counsel. Joseph, however, filed a nine-page appellate brief that raised only one issue: the Superior Court's decision to allow the prosecution to amend the information to specify that it would proceed under a theory that Simon committed felony murder rather than premeditated murder. In an August 25, 1997 Opinion and Order, the Appellate Division found no error with the amendment, and affirmed Simon's convictions. When Simon subsequently wrote Joseph stating that he demanded that he appeal the Appellate Division's decision to the United States Court of Appeals for the Third Circuit, Joseph replied by letter dated September 10, 1997, advising him that "such an appeal

---

[5] Although neither the stipulation, nor the District Court's Judgment and Commitment approving the stipulation, identifies any legal authority for setting aside Roach's first-degree murder conviction and replacing it with a conviction for second-degree murder, the United States Attorney's June 12, 1996 motion invoked Federal Rule of Criminal Procedure 35(b), which allows a court to reduce a sentence if the defendant, after initial sentencing, "provided substantial assistance in investigating or prosecuting another person." Since the issue is not before us in this legal malpractice appeal, we take no position as to whether Rule 35(b) permits a court to set aside a conviction of a charge that carries a mandatory minimum sentence of life imprisonment without parole in exchange for providing substantial assistance.

would be frivolous and without merit." Although Simon filed a *pro se* notice of appeal, dated September 11, 1997, it was only received by the District Court on September 22, 1997, and thus the Third Circuit dismissed the appeal as untimely in a December 12, 1997 Order.

On August 19, 1998, the Superior Court denied Simon's *pro se* habeas petition, which claimed that Ayala provided him with ineffective assistance of counsel. Undeterred, Simon appealed that decision to the Appellate Division on January 28, 1999. Although the Appellate Division appointed counsel to represent Simon on appeal, adjudication of the appeal was delayed due to that attorney's request to withdraw as counsel. The Appellate Division ultimately appointed Arturo Watlington, Esq., to represent Simon during the appeal of the denial of his first habeas corpus petition. However, Watlington never filed a brief in that case. Consequently, on January 25, 2001, the Appellate Division dismissed that appeal for failure to prosecute.

While that appeal remained pending, Simon initiated a legal malpractice action against Joseph — the subject of the instant appeal — on September 3, 1999. In the complaint, Simon alleged that Joseph committed malpractice by failing to challenge the proceedings based upon other meritorious issues, including (1) the fact that the information had been amended to add the robbery charge — the underlying felony for the first-degree felony murder charge — only on the day of jury selection, (2) the sufficiency of the evidence, and (3) that the prosecution may have violated the disclosure requirements of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Simon also alleged that Joseph should have investigated whether Roach had been given a reward for his testimony, and should have honored his request to appeal the Appellate Division's decision to the Third Circuit. However, based on the record before this Court, including the Superior Court's certified docket sheet, it appears the Clerk of the Superior Court simply docketed the complaint without ever assigning it to a judge.

On February 28, 2000, Simon filed a second *pro se* habeas corpus petition with the Superior Court. *Simon*, 679 F.3d at 112. In that petition, Simon raised numerous additional issues, including (1) that the trial court erred when it permitted amendment of the information to add the robbery charge; and (2) that the government violated *Brady v. Maryland* when it permitted Roach to testify without disclosing that he had received a sentence reduction in exchange for his testimony. The Superior Court

appointed counsel to represent Simon in that matter; however, when Simon requested that the Superior Court discharge that attorney and appoint substitute counsel, the Superior Court granted the request for discharge, but refused to appoint a new attorney.

While litigating his second habeas corpus petition with the Superior Court, Simon filed a petition with the District Court on January 25, 2002.[6] The District Court appointed Beth Moss, Esq., to represent him in that matter.[7] On July 18, 2002, the Superior Court denied Simon's second local habeas corpus petition, and Simon appealed the July 18, 2002 Opinion to the Appellate Division by mailing a notice of appeal dated July 30, 2002, but received on August 6, 2002. On January 5, 2004, the Appellate Division appointed Moss to represent Simon in that appeal as well. However, Moss moved to withdraw as counsel pursuant to *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967). Rather than reach the merits of the *Anders* claim, the Appellate Division appointed new counsel; however, that attorney also sought to withdraw pursuant to *Anders*. The Appellate Division denied the motion on October 26, 2005, noting that it was not clear whether the Superior Court had issued the certificate of probable cause required by Appellate Division Rule 14(b).

On July 12, 2006, the Superior Court finally entered an order in Simon's legal malpractice action, which directed Joseph to respond to Simon's complaint. Joseph moved to file an answer out of time on October 27, 2006, and in a December 11, 2006 Opinion and Order, the Superior Court granted the motion. The case, however, would continue to languish for more than a year without additional docket activity.

On September 4, 2007, after apparently discovering the absence of a certificate of probable cause, the Appellate Division remanded Simon's appeal to the Superior Court for the limited purpose of determining whether a certificate of probable cause should issue. On February 22,

---

[6] On May 18, 2000, Simon had filed a *pro se* habeas corpus petition with the District Court. However, on October 29, 2000, the District Court dismissed that petition for failure to exhaust all available remedies under local Virgin Islands law. It is not clear from the record before us why the District Court permitted Simon's second federal habeas petition to proceed notwithstanding the fact that his local habeas petition still remained pending.

[7] The District Court ultimately denied the petition on June 28, 2006. Although Simon appealed that decision to the Third Circuit, the appeal was administratively closed after neither the District Court nor the Third Circuit issued a certificate of appealability.

2008, the Superior Court found that the issues Simon raised in his second local habeas corpus petition were not frivolous, and issued the certificate. *Simon*, 679 F.3d at 113. However, notwithstanding the Superior Court's explicit finding, Simon's counsel again moved to withdraw pursuant to *Anders*.

While the *Anders* motion was pending in the Appellate Division, the legal malpractice action was assigned to a new judge, who conducted a hearing on January 7, 2008, and set the matter for jury selection and trial on August 11, 2008; however, these dates were repeatedly continued. On January 14, 2009, Joseph moved to dismiss the complaint, which Simon opposed on April 15, 2009. However, after the death of the judge assigned to the case, the case would lay dormant yet again due to numerous judicial recusals.

In the interim, Simon filed a third habeas corpus petition with the Superior Court on July 31, 2009, which raised largely the same issues as his prior habeas corpus petition. In an August 6, 2009 Opinion and Order, the Appellate Division granted the *Anders* motion, held that all of Simon's claims with respect to his appeal of the second habeas corpus petition were frivolous — notwithstanding the Superior Court's contrary finding — and affirmed the July 18, 2002 Opinion. *Simon v. Gov't of the V.I.*, D.C. Civil App. No. 2003-24, 2009 U.S. Dist. LEXIS 79644, at *1 (D.V.I. App. Div. Aug. 6, 2009). Simon appealed that decision to the Third Circuit, which appointed Joseph DiRuzzo, III, Esq., to represent him on appeal. *Simon*, 679 F.3d at 113. Meanwhile, the Superior Court denied Simon's third habeas corpus petition on September 22, 2010, and Simon appealed that decision to this Court, which it docketed as S. Ct. Civ. No. 2010-0085. Upon Simon's motion, this Court appointed DiRuzzo to represent him in that appeal, and held the appeal in abeyance pending resolution of the Third Circuit proceedings.

On December 31, 2011, Simon also filed a grievance against Joseph with the Office of Disciplinary Counsel. In his grievance, Simon argued — as he does in his legal malpractice complaint — that Joseph committed ethical misconduct by refusing to file a notice of appeal on his behalf with the Third Circuit.

Notwithstanding the pendency of Simon's appeals, his legal malpractice action was re-assigned to a judge able to consider the case on the merits. In a January 11, 2012 Opinion and Order, the Superior Court granted Joseph's motion to dismiss. Relying exclusively on cases

involving legal malpractice claims that arose in the civil context, the Superior Court held that a legal malpractice claim premised on the failure to timely file a notice of appeal may only succeed if the plaintiff can prove that an appeal, if timely filed, would have resulted in the judgment being reversed. As to the remaining claims, the Superior Court proceeded to determine whether Joseph provided ineffective assistance of counsel in violation of the Sixth Amendment, and concluded that he did not. Notably, the Superior Court concluded that Joseph was not required to file a notice of appeal with the Third Circuit if he believed any appeal would have been frivolous. Simon timely filed his notice of appeal on February 8, 2012.

While the instant appeal remained pending, the related matters[8] continued to proceed. Notwithstanding the Superior Court's ruling in favor of Joseph, Disciplinary Counsel continued to investigate Simon's grievance, and the Ethics and Grievance Committee of the Virgin Islands Bar Association held a hearing on May 3, 2012. Although Joseph argued that the Superior Court's January 11, 2012 Opinion should have preclusive effect, the Committee, in a September 19, 2012 decision, disagreed with the Superior Court, and found that Joseph committed serious ethical misconduct by refusing to file the notice of appeal. On July 11, 2013, the Committee filed with this Court a petition requesting his suspension from the practice of law. Similarly, the Third Circuit, in a May 9, 2012 Opinion, reversed the Appellate Division's August 6, 2009 Opinion and Order, finding (1) that Simon's second habeas corpus petition raised numerous nonfrivolous issues, such as his *Brady* claim; and (2) that the issuance of the certificate of probable cause, in and of itself, demonstrated that there was arguable merit to the appeal. Consequently, the Third Circuit remanded the matter to the Appellate Division to issue a new briefing schedule and consider all of Simon's arguments on the merits. *Simon*, 679 F.3d at 115-16. To date, the Appellate Division has not issued a decision. Upon the parties' request,

---

[8] In his appellate brief, Simon, in his Statement of Related Cases and Proceedings, claims that "[t]here is no related proceeding currently pending before any other courts." (Appellant's Br. 1.) As we explained above, this is certainly not the case, since appeals related to Simon's second and third local habeas corpus petitions remain pending. And as we explain below, the pendency of those appeals is highly relevant to the instant appeal. Nevertheless, despite Simon's failure to bring these matters to our attention, we may take judicial notice of these related proceedings. *Mendez v. Gov't of the V.I.*, 56 V.I. 194, 205 (V.I. 2012).

this Court continues to hold S. Ct. Civ. No. 2010-0085 in abeyance pending the conclusion of the Appellate Division proceedings.

## II. JURISDICTION AND STANDARD OF REVIEW

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees [and] final orders of the Superior Court . . . ." V.I. CODE. ANN. tit. 4, § 32(a). Since the Superior Court's January 11, 2012 Opinion and Order dismissed, with prejudice, Simon's complaint in its entirety, it disposed of all of the claims that Simon had submitted to the Superior Court for adjudication. Accordingly, it constitutes an appealable final judgment. *Brooks v. Gov't of the V.I.*, 58 V.I. 417, 422 (V.I. 2013).

The Court reviews the Superior Court's factual findings for clear error and exercises plenary review over the Superior Court's application of the law to those facts. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007).

## III. ANALYSIS

In his appellate brief, Simon presents only a single issue for our review: whether the Superior Court erred by granting Joseph's motion to dismiss his complaint. (Appellant's Br. 1.) Simon proceeds to argue five sub-issues, which largely track the analysis conducted by the Superior Court in its January 11, 2012 Opinion. Specifically, Simon argues (1) that Joseph breached a duty by filing an "incompetent" brief with the Appellate Division and refusing to file a notice of appeal with the Third Circuit; (2) that the claims he wished for Joseph to raise on direct appeal to the Appellate Division were not frivolous, and could not have been frivolous based on the of a certificate of probable cause in the second habeas proceeding and the Third Circuit's subsequent characterization of those same claims as non-frivolous; (3) that the January 11, 2012 Opinion did not address all alleged instances of legal malpractice committed by Joseph; (4) that the Superior Court erred when it rejected his argument that Joseph could not ethically represent Simon while serving as a member of the Board of the Office of the Territorial Public Defender, given that the Public Defender received permission to withdraw as counsel; and (5) that the Superior Court committed error when it held that

he failed to establish that Joseph provided him with ineffective assistance of counsel.[9]

We need not, however, address all of Simon's five sub-part arguments. For the following reasons, we conclude that the Superior Court committed a fundamental error when it considered Simon's claims notwithstanding the pendency of unresolved related proceedings in this and other courts.

### A. Criminal Legal Malpractice in the Virgin Islands

■■ Unlike medical malpractice, which is governed by statute, *see Brady v. Cintron*, 55 V.I. 802, 812-13 (V.I. 2011), legal malpractice is a common law cause of action. *Arlington Funding Servs., Inc. v. Geigel*, 51 V.I. 118, 129, 134-35 (V.I. 2009). While this Court has never set forth the elements of legal malpractice when pled as a tort,[10] in its January 11, 2012 Opinion, the Superior Court, relying on persuasive, but not binding, authority from the District Court and courts of other jurisdictions, held that a legal malpractice plaintiff must prove "1) the attorney-client relationship giving rise to a duty; 2) breach of that duty; 3) the causal connection between the negligent conduct and the resulting injury, and 4)

---

[9] In its January 11, 2012 Opinion, the Superior Court identified Simon's complaint as asserting claims for both legal malpractice and ineffective assistance of counsel, and analyzed these claims separately. However, as this Court has previously instructed, prisoners may not bring tort claims and habeas corpus claims simultaneously as part of a single civil action. *Smith v. Turnbull*, 54 V.I. 369, 376-77 (V.I. 2010) (collecting cases). Moreover, regardless of the labels Simon may have given to his causes of action in his complaint, the Superior Court, in light of Simon's *pro se* status, bore an obligation to look beyond those labels and determine the substantive relief that Simon was actually seeking. *Joseph v. Bureau of Corrections*, 54 V.I. 644, 654 n.7 (V.I. 2011) ("normally a trial court should endeavor to determine what claims are being presented before determining whether they have been barred"). Since ineffective assistance of counsel is not a free-standing civil cause of action, but a potential ground for setting aside a conviction in a collateral proceeding, and because it is apparent from Simon's complaint that he sought to receive money damages from Joseph, it is clear that Simon's complaint simply identified numerous instances of legal malpractice. Nevertheless, for the reasons we explain below, the Superior Court's error in reviewing some of Simon's claims under the legal test for ineffective assistance of counsel is not binding on the pending related matters involving that issue, since Simon's cause of action for legal malpractice has not yet accrued and is thus not ripe for consideration.

[10] In *Arlington Funding*, this Court observed that a legal malpractice claim may sound in either tort or contract, and that the elements of legal malpractice, when rooted in contract, largely mirror the elements of breach of contract. 51 V.I. at 134-35. However, this Court did not set forth the elements of a legal malpractice claim rooted in tort, given that the statute of limitations on such a cause of action had lapsed. *Id.* at 134.

actual loss or damage." *Moorehead v. Miller*, 102 F.R.D. 834, 838, 21 V.I. 79 (D.V.I. 1984). But as courts approach legal malpractice claims differently based on whether the plaintiff asserts it as a tort or contract cause of action, many jurisdictions further distinguish between civil legal malpractice and criminal legal malpractice. Although the January 11, 2012 Opinion ignored the distinction recognized in this considerable body of case law — perhaps because the parties did not bring it to the Superior Court's attention — we decline to do so, given that the parties may not implicitly stipulate to the law, *see Rawlins v. People*, 58 V.I. 261, 269 n.3 (V.I. 2013), "especially in an unsettled and everchanging area" where this Court, were it to "follow blindly an incorrect interpretation of the law," may establish an incorrect binding precedent that may unfairly and unjustifiably affect the disposition of other cases. *Murrell v. People*, 54 V.I. 338, 348 (V.I. 2010) (quoting *Carlile v. South Routt Sch. Dist. Re-3J IN*, 739 F.2d 1496, 1500 (10th Cir. 1984)).

### 1. Ascertaining Virginia Islands Common Law

■ This Court, as the highest local court in the Virgin Islands, possesses the inherent and statutory authority to shape the common law of the Territory. *See Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 974-80 (V.I. 2011) (recognizing that the statute vesting the Virgin Islands Supreme Court with "supreme judicial power" implicitly repealed contrary provisions of 1 V.I.C. § 4).[11] This authority includes determining the existence and elements of a common law cause of action, *e.g., Joseph v. Daily News Publ'g Co.*, 57 V.I. 566, 586 (V.I. 2012); *Matthew v. Herman*, 56 V.I. 674, 678-79 (V.I. 2012), as well as when such an action

---

[11] In 1957, the Legislature enacted section 4 of title 1 of the Virgin Islands Code, which provided that "[t]he rules of the common law, as expressed in the restatements of the law approved by the American Law Institute . . . shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary." During the more than half a century in which "the Virgin Islands lacked a fully developed local judiciary" and all major issues of Virgin Islands local law were adjudicated by federal courts, section 4 represented a mechanism through which the Legislature could maintain a modicum of control over the direction of local Virgin Islands jurisprudence. *Banks*, 55 V.I. at 979. However, the subsequent enactment by the Legislature of section 21 of title 4 — vesting this Court with the "supreme judicial power" of the Territory — "supersedes and alters section 4 of title 1," thus allowing this Court and the Superior Court to shape the common law of the Territory in the same manner as do local courts in other United States jurisdictions. *Id.*

accrues. *See, e.g., Anthony v. FirstBank Virgin Islands*, 58 V.I. 224, 230 (V.I. 2013). And in the absence of any binding precedent from this Court, the Superior Court also "may determine the common law without automatically and mechanistically following the Restatements." *Banks*, 55 V.I. at 979.

■ Since no statute sets forth the requirements for maintaining a legal malpractice action, and this Court has never issued a decision adjudicating a malpractice suit brought by a convicted criminal defendant, we must determine which common law rule to adopt. In doing so, this Court considers three non-dispositive factors: (1) whether any Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands. *Matthew*, 56 V.I. at 680-81. Because our research has not disclosed a single opinion written by a Virgin Islands court — whether federal or local — addressing what standards should govern legal malpractice claims stemming from criminal proceedings, we find that this case is one of first impression, and thus the first *Banks* factor has been addressed. Ergo, only the second and third factors are relevant to our inquiry.

### 2. The Majority Rule

Although only representing non-binding persuasive authority in light of our decision in *Banks, see Ross v. Hodge*, 58 V.I. 292, 304 (V.I. 2013), the Restatements of the Law promulgated by the American Law Institute remain a helpful guide to determining how other jurisdictions approach the question of legal malpractice claims stemming from criminal proceedings. While sections 48 through 54 of the RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS set forth general principles for a lawyer's civil liability without explicitly distinguishing between malpractice that occurred in civil or criminal litigation, comment d to section 53 notes that a majority of American jurisdictions impose different requirements in the criminal context:

> *d. Action by a criminal defendant.* A convicted criminal defendant su-
> ing for malpractice must prove both that the lawyer failed to act prop-
> erly and that, but for that failure, the result would have been different,
> for example because a double-jeopardy defense would have prevented

conviction. Although most jurisdictions addressing the issue have stricter rules, under this Section it is not necessary to prove that the convicted defendant was in fact innocent. As required by most jurisdictions addressing the issue, a convicted defendant seeking damages for malpractice causing a conviction must have had that conviction set aside when process for that relief on the grounds asserted in the malpractice action is available.

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 53 cmt. d.

▮ As the Restatement recognizes, most jurisdictions have concluded — at an absolute minimum[12] — that the defendant must have his convictions set aside prior to filing suit for legal malpractice. *See, e.g., Steele v. Kehoe*, 747 So.2d 931, 933 (Fla. 1999) ("With respect to a legal malpractice suit brought by one convicted of a crime, a majority of jurisdictions have held that appellate or postconviction relief is a prerequisite to maintaining the action.") (collecting cases); *Shaw v. State, Dept. of Admin, Public Defender Agency*, 816 P.2d 1358, 1360 (Alaska 1991) ("We hold that a convicted criminal defendant must obtain post-conviction relief before pursuing an action for legal malpractice against his or her attorney."); *Morgano v. Smith*, 110 Nev. 1025, 879 P.2d

---

[12] As the Restatement notes, several jurisdictions require a convicted defendant, as a prerequisite to a legal malpractice action, to not just obtain successful post-conviction relief, but to also prove actual innocence. *See, e.g., State ex rel. O'Blennis v. Adolf*, 691 S.W.2d 498 (Mo. Ct. App. 1985); *Moore v. Owens*, 298 Ill. App. 3d 672, 698 N.E.2d 707, 232 Ill. Dec. 616 (1998); *Harris v. Bowe*, 178 Wis. 2d 862, 505 N.W.2d 159 (1993) (defendant must prove innocence, which guilty plea precludes). Under the actual innocence approach, a defendant who obtains a lesser form of post-conviction relief than an acquittal — such as a new trial, or specific performance of a rejected plea agreement — might still be barred from bringing a malpractice suit. However, since Simon has not yet succeeded in any of his numerous attempts to obtain post-conviction relief, we decline to determine, as part of this appeal, whether he would need to establish his actual innocence as part of any potential future legal malpractice claim against Joseph.

We also recognize that some jurisdictions permit a convicted defendant to bring a legal malpractice claim without first obtaining reversal of his convictions if an attorney's negligence resulted in a sentencing error that caused the defendant to actually serve a sentence greater than the maximum permitted by law. *See, e.g., Jones v. Link*, 493 F. Supp. 2d 765, 770 (E.D. Va. 2007); *Powell v. Associated Counsel for Accused*, 131 Wn. App. 810, 129 P.3d 831, 832 (2006); *Johnson v. Babcock*, 206 Ore. App. 217, 136 P.3d 77, 80 (2006). Again, because Simon's legal malpractice claim alleges that Joseph's alleged negligence caused his convictions, rather than merely resulting in an illegal sentence, we need not decide whether to adopt the illegal sentence exception to the majority rule as part of this appeal.

735, 737 (1994) ("We now hold that, to state a claim for legal malpractice against private criminal defense counsel . . . . the plaintiff must plead that he or she has obtained appellate or post-conviction relief in order to overcome a motion for summary judgment or a motion to dismiss."); *Glenn v. Aiken*, 409 Mass. 699, 569 N.E.2d 783, 788 (1991) (convicted criminal must prove innocence to state colorable claim for legal malpractice against defense attorney); *Carmel v. Lunney*, 70 N.Y.2d 169, 511 N.E.2d 1126, 1128, 518 N.Y.S.2d 605 (1987) ("[S]o long as the determination of his guilt of that offense remains undisturbed, no cause of action [for legal malpractice] will lie."); *Stevens v. Bispham*, 316 Ore. 221, 851 P.2d 556, 566 (1993) ("We hold that, in order for one convicted of a criminal offense to bring an action for professional negligence against that person's criminal defense counsel, the person must, in addition to alleging a duty, its breach, and causation, allege 'harm' in that the person has been exonerated of the criminal offense through reversal on direct appeal, through post-conviction relief proceedings, or otherwise."); *Peeler v. Hughes & Luce*, 868 S.W.2d 823, 832 (Tex. App. 1993) ("We hold that, as a matter of law, a person who admits guilt of a crime and remains convicted of that crime cannot establish that any actions or omissions by his attorney were the proximate or producing cause of the indictment or conviction."). *See also* Gregory G. Sarno, *Legal Malpractice in Defense of Criminal Prosecution*, 4 A.L.R.5th 273, § 5.5 (2011 Supp.) (collecting cases). In fact, only one state — Ohio — has declined to differentiate between malpractice claims arising out of civil and criminal proceedings. *Krahn v. Kinney*, 43 Ohio St. 3d 103, 538 N.E.2d 1058, 1061 (1989).

Thus, the second *Banks* factor heavily favors adopting a rule precluding a criminal defendant from even filing a legal malpractice claim against a former defense attorney until and unless the convictions are set aside on direct appeal or as a result of post-conviction proceedings, or otherwise. Nevertheless, it is the third *Banks* factor — determining which approach represents the soundest rule for the Virgin Islands — that is most important to our analysis. *Matthew*, 56 V.I. at 681.

### 3. The Soundest Rule for the Virgin Islands

 We conclude that the majority rule, rather than the minority approach endorsed by Ohio, is the sounder rule. Criminal defendants and civil litigants are not similarly situated with respect to obtaining redress

for an attorney's wrongful conduct. In the Virgin Islands, a criminal defendant may appeal a conviction as of right, and if that appeal is unsuccessful, file an unlimited number of successive habeas corpus petitions under local law, *Bryan v. Gov't of the V.I.*, 56 V.I. 451, 457 (V.I. 2012), constrained only by abuse of the writ and similar common law doctrines.[13] *See, e.g., Price v. Johnson*, 334 U.S. 266, 287-93, 68 S. Ct. 1049, 92 L. Ed. 1356 (1948). If those attempts at post-conviction relief are fully exhausted and unsuccessful, the convicted defendant may file a federal habeas corpus petition, albeit under a more constrained standard of review. *See* Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996). And while federal law generally prohibits multiple habeas corpus petitions, occasionally, the prisoner may have an opportunity to file a successive petition in federal court as well. *See, e.g.*, 28 U.S.C. § 2244(b)(2)(A)-(B).

But that is not the case with civil litigation. For example, if an attorney overlooks the statute of limitations in a civil case, it will typically be the end of the matter; the affected client will not be able to file a petition, years later, seeking to reopen the case. *See, e.g., Santiago v. V.I. Housing Auth.*, 57 V.I. 256, 273 (V.I. 2012) (observing that "[o]nce a cause of action has accrued and the statutory period for bringing the action has expired, an injured party is barred from bringing suit" on it, and holding that an amended complaint, served more than two years after the plaintiff's personal injury claims accrued and the limitation period had started to run, was time barred). "In contrast to the postconviction relief available to a criminal defendant, a civil matter lost through an attorney's negligence is lost forever," with "no recourse other than a malpractice claim." *Wiley v. County of San Diego*, 19 Cal. 4th 532, 79 Cal. Rptr. 2d 672, 966 P.2d 983, 989-90 (1998).

More importantly, the majority approach promotes judicial economy and comity among the courts. To illustrate the importance of this principle, we need look no further than this case. At the time the Superior Court issued its January 11, 2012 Opinion, it knew that Simon's appeals of his second and third habeas corpus petitions were pending, respectively, before the Third Circuit and this Court. Notwithstanding this knowledge, it proceeded to address the merits of the very question that the

---

[13] *See Rodriguez v. Bureau of Corrections*, 58 V.I. 367 (V.I. 2013) (Hodge, C.J., concurring) (summarizing differences between federal and local habeas corpus actions).

Third Circuit had before it: whether the issues Simon claims Joseph should have addressed on direct appeal to the Appellate Division were frivolous. Likewise, while it is not clear if the Superior Court had actual knowledge that Simon filed a grievance against Joseph with the Ethics and Grievance Committee, that proceeding involved another issue pivotal to the malpractice claim: whether Joseph breached an ethical duty to Simon by refusing to file a notice of appeal. In both cases, the Superior Court reached the opposite conclusion of the other tribunals considering the question. Although it found that all of Simon's claims were frivolous, the Third Circuit explicitly found that those very same issues were not frivolous, and remanded the matter to the Appellate Division for consideration on the merits. And while the Superior Court, in its January 11, 2012 Opinion, found that ethical rules did not require Joseph to file a notice of appeal on Simon's behalf, the Ethics and Grievance Committee disagreed with that analysis and held to the contrary. Under the majority rule, such conflicting adjudications would not occur, since Simon would be precluded from even commencing his legal malpractice action until, at a minimum, his convictions are set aside.

█ Moreover, it is important to reiterate that prisoners may not seek tort damages and habeas corpus relief as part of the same lawsuit. *Smith v. Turnbull*, 54 V.I. 369, 376-77 (V.I. 2010) (collecting cases). Although the Superior Court ultimately ruled in Joseph's favor in this particular case, we note that the judge originally assigned to this matter had set the case for jury selection and trial, which ultimately did not occur due to that judge's death and the subsequent reassignment to a new judge, who apparently viewed the case differently. Had this matter proceeded to trial as originally scheduled, it is possible that Simon may have received a monetary judgment based on a finding that Joseph provided ineffective assistance of counsel or otherwise breached his duties to him, and yet remained incarcerated due to the inability to set aside his convictions as a remedy in the malpractice case. The majority rule, however, circumvents such an absurd result by preventing a legal malpractice matter from proceeding until and unless post-conviction relief has been granted.

We also cannot ignore that the Virgin Islands is unique among United States jurisdictions due to the small size of the Virgin Islands Bar and the large need to appoint counsel in criminal cases. Although it is not clear from the record before us whether the Appellate Division appointed

Joseph to represent Simon or if he was retained and entered a voluntary appearance after the Territorial Public Defender received permission to withdraw as counsel, we note that around that time the District Court's procedures provided that "each active member of the Virgin Islands Bar must remain available to accept appointments to appear on behalf of indigent criminal defendants," and that at that time "each member [could] expect to receive appointments about four times per year." *Barnard v. Thorstenn*, 489 U.S. 546, 557, 109 S. Ct. 1294, 103 L. Ed. 2d 559 (1989). Even today, it remains the practice of the Superior Court to "select[] appointed counsel from a list of all [active] attorneys admitted to practice law in the Virgin Islands, using a random appointment system." *In re Joseph*, S. Ct. Civ. No. 2013-0015, 2013 V.I. Supreme LEXIS 14, *2 (V.I. Apr. 5, 2013). The majority approach reduces the costs, time, and burden associated with appointed counsel defending frivolous civil claims and lawsuits, since only meritorious ones — those where the convicted defendant successfully obtained post-conviction relief — would be permitted to proceed.

██ Finally, we note that the majority approach would not result in injustice by rendering legitimate legal malpractice claims time barred due to any delays in obtaining successful post-conviction relief. As we have previously explained, legal malpractice is subject to either a two year statute of limitations — if pled as a tort — or a six year limitations period if presented as a breach of contract action. *Arlington Funding Services, Inc.*, 51 V.I. at 128 (citing 5 V.I.C. § 31). We agree with the numerous courts that have held that the statute of limitations for legal malpractice would not even begin to commence until the convicted defendant's convictions have actually been set aside. *See, e.g., Steele*, 747 So.2d at 933; *Shaw*, 816 P.2d at 1361.

## B. Simon's Legal Malpractice Cause of Actions Are Not Ripe

██ Having adopted the majority approach, we must now apply that rule to the instant case. As explained above, the requirement that a criminal defendant successfully obtain post-conviction relief is not merely an element of a legal malpractice action — if it were, we would question whether tolling of the statute of limitations would be warranted. Rather, the requirement is essentially an extension of the ripeness doctrine, under which courts will defer from ruling on a claim when ongoing or potential future litigation precludes an informed determination of the issues. *V.I.*

*Gov't Hosp. & Health Facilities Corp. v. Gov't of the V.I.*, 50 V.I. 276, 280 (V.I. 2008).

■ Since neither this Court nor the Superior Court are Article III courts, "[i]n the territorial courts, ripeness, like standing, is . . . not jurisdictional." *In the Interest of K.J.F.*, S. Ct. Crim. No. 2013-0024, 2013 V.I. Supreme LEXIS 35, *12 n.6 (V.I. July 5, 2013). As a non-jurisdictional, judicially-created doctrine, the ripeness doctrine, like other claims-processing rules, is subject to waiver if not timely asserted by the party that benefits from its application. *See, e.g., Benjamin v. AIG Ins. Co. of P.R.*, 56 V.I. 558, 565 (V.I. 2012); *Vazquez v. Vazquez*, 54 V.I. 485, 489-90 (V.I. 2010). Importantly, it is well-established that courts may invoke claims-processing rules *sua sponte* if the "rule implicates judicial interests beyond those of the parties." *United States v. Mitchell*, 518 F.3d 740, 750 (10th Cir. 2008). *See also Long v. Atlantic City Police Dep't*, 670 F.3d 436, 445 n.18 (3d Cir. 2012) ("[G]iven the administrative and institutional interests in enforcing appellate deadlines . . . a persuasive argument can be made that *sua sponte* dismissal [for failure to prosecute] should be the rule rather than the exception."). And it is equally well-established that ensuring comity between courts is a judicial interest sufficiently serious to warrant *sua sponte* invocation of claims-processing rules and other affirmative defenses. *See, e.g., Day v. McDonough*, 547 U.S. 198, 210, 126 S. Ct. 1675, 164 L. Ed. 2d 376 (2006) (federal district court, when reviewing federal habeas petition challenging state court conviction, may invoke statute of limitations *sua sponte*); *Clodfelter v. Republic of Sudan*, 720 F.3d 199, 209 (4th Cir. 2013) (holding comity and judicial efficiency warrant *sua sponte* consideration of res judicata).

■ In this case, we need not decide whether the Superior Court correctly dismissed Simon's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)[14] because the Superior Court should never have considered any aspect of Simon's claims on the merits. It is obvious that

---

[14] In his appellate brief, Simon argues, among other things, that the Superior Court erred by not construing Joseph's motion to dismiss as a motion for summary judgment, and therefore should have applied the legal standard for summary judgment. However, since it is undisputed that none of Simon's criminal convictions have been set aside, and that that the Superior Court should have dismissed Simon's malpractice action without prejudice, we need not reach this issue as part of this appeal, since the result would remain the same regardless of which legal standard the Superior Court should have employed.

Simon's causes of action are unripe; on the very first page of his complaint, Simon identifies himself as "an inmate at the Golden Grove Correctional Facility on St. Croix U.S.V.I. during all times relevant to this complaint," (J.A. 17), with the remainder of the complaint explaining that he has been convicted of first-degree murder and other offenses and attributing those convictions to Joseph's alleged failures. By not *sua sponte* invoking the ripeness doctrine to dismiss Simon's complaint and instead proceeding to consider the matter on the merits, the Superior Court severely disrupted comity amongst federal and local courts by creating inconsistent adjudications of essentially the same factual and legal issues between itself, the Third Circuit, the Ethics and Grievance Committee, and the judge who issued Simon a certificate of probable cause. And even if no related proceedings were pending at the time the Superior Court issued its January 11, 2012 Opinion, the possibility that Simon might, at some future date, prosecute another local or federal habeas corpus petition also cautioned against resolving these issues on the merits. Rather, to avoid potentially inconsistent adjudications, the Superior Court should have simply dismissed Simon's complaint on the ground that it was not ripe, without prejudice to its re-filing in the event Simon ever successfully obtains post-conviction relief on some future date. Since it did not do so, it committed a fundamental error that warrants vacating the underlying judgment.

## IV. CONCLUSION

The Superior Court committed error when, despite knowing that Simon's convictions had never been set aside, it proceeded to adjudicate his claim for legal malpractice and dismiss his lawsuit with prejudice. Under the majority rule, which we hereby adopt, the Superior Court should have simply dismissed Simon's legal malpractice claim, without considering it on the merits, without prejudice to re-filing in the event he obtains post-conviction relief at some future date. Accordingly, we vacate the January 11, 2012 Opinion and Order and remand this matter to the Superior Court so that it may dismiss Simon's complaint without prejudice.