**SYLVIA ANETA HENRY, Plaintiff**

v.

**GOVERNMENT OF THE VIRGIN ISLANDS, Defendant**

Civil No. 322-1973

District Court of the Virgin Islands

Div. of St. Croix

May 7, 1975

Russell B. Johnson of counsel, Christiansted, St. Croix, V.I.

Attorney General Office, Assistant Attorney General, Curtis E. Tatar of counsel, Christiansted, St. Croix, V.I.

YOUNG, *District Judge*

### MEMORANDUM OPINION AND JUDGMENT

## I

### BACKGROUND FACTS

The liability portion of a bifurcated trial was held in this wrongful death action on April 21, 1975. Plaintiffs are the wife and children of Wrenford Henry, a thirty-year-old man who died at Richmond Penitentiary on the morning of September 10, 1972. Apprehended on September 6, 1972 during the commission of a larceny at a local store, decedent was found to have been an "overstay alien", who failed to depart the United States within sixty days after the termination of his last employment, as required by the Immigration Service. That same day, he was placed in Richmond Penitentiary pursuant to an order to show cause why he should not be deported.

In the early morning of September 7, decedent became ill and was escorted by Correction Officers Merle and Lewis to the emergency room at the Charles Harwood Memorial Hospital. At approximately 2:45 a.m., he was examined by the doctor on duty, who diagnosed an upper respiratory infection with gastroenteritus, or an inflammation of the stomach and intestine. Henry was then administered a drug to suppress nausea and antibiotics and aspirin for the res-

piratory infection. Decedent was thereafter returned to the prison, and three days later, on September 10, was found dead in his cell.

In their complaint, plaintiffs appear to have set forth claims sounding both in res ipsa loquitur and more traditional concepts of negligence. I will, therefore, attempt to evaluate the evidence presented at trial in the light of all legal theories which might conceivably find support in the record.

Pursuant to a Memorandum Opinion and Order filed in this Court on January 13, 1975, the amendment to the Virgin Islands wrongful death statute (Act No. 3556 of the Tenth Legislature approved April 29, 1974) was held applicable to the instant action. Title 5, Section 76 of the Virgin Islands Code, as amended, reads in pertinent part:

"When the death of a person is caused by the wrongful act, negligence, default, . . . of any person . . . and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued, the person . . . shall be liable for damages. . . ." 5 V.I.C. § 76(c) (1974).

From the foregoing provision, it is clear that plaintiff must establish a causal connection between the wrongful act of defendant and the death of the decedent. At trial, Dr. Glenn, St. Croix's Medical Examiner, testified that he conducted an autopsy of decedent Henry on September 12, 1972. The examination revealed that the body showed signs of malnutrition with a possible history of drug addiction and alcoholism. The only evidence of external trauma included a lesion on the lower lip of the decedent and a three-quarter-inch deep bruise on the back of the head; the head injury evinced no skull fracture but was accompanied by a hemorrhage throughout the brain. In his autopsy report, Dr. Glenn concluded that Henry died of unknown causes, because the head injury, ostensibly caused by either a fall or blow to the head, was not of such severity as would nor-

mally cause death. In response to a question by the Court at trial, however, Dr. Glenn suggested that the head injury was the most probable cause of death.

## II

### RES IPSA LOQUITUR

■ Section 382D(1) of the Restatement of Torts (Second) sets forth the three essential requirements without which a res ipsa inference may not be drawn:

"It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when

(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff."

It is fully recognized that the foregoing doctrine is based at least in part on the theory that the defendant who has allegedly caused the injury either knows the cause of the accident or has the best opportunity to ascertain it; that is, that the true cause of the accident is practically assessible to the defendant but inaccessible to the injured party. See, e.g., Augspurger v. Western Auto Supply Co., 134 N.W.2d 913, 195 (Iowa 1965). The policy appears to be particularly strong in a case in which the injured party was an inmate at the time of the injury and who by virtue of this status alone is held more or less incommunicado within the confines of the institution. Add to this the fact that Henry died as a result of his injury, and his survivors are even more handicapped in their ability to relate the circumstances surrounding the death.

■ On the other hand, plaintiffs have failed to eliminate decedent's own conduct as a possible cause of the injury

731

and subsequent death. Dr. Glenn's testimony that decedent's head wound may have been caused by either a blow to the back of the head *or a fall* leaves open the possibility that Henry, whose autopsy indicated possible symptoms of delirium tremens, might have indeed slipped or thrown himself against a hard object. "Where the evidence fails to show a greater probability that the event was due to defendant's negligence than it was caused by [decedent's] own conduct, the inference of the defendant's responsibility cannot be drawn." Restatement of Torts (Second), § 328D, comment i, at 163 (1965).

The recent Third Circuit opinion in Smith v. Spina, 477 F.2d 1140 (3d Cir. 1973), aptly illustrates this point. In that case, appellant alleged that he had been in perfectly good health before he was taken into police custody, that he was beaten while in the custody of the police, and that the police did not provide reasonable explanation for the causes of plaintiff's injuries. In holding that the doctrine of res ipsa loquitur would not apply, the Court emphasized the defendant's assertion that it was the plaintiff's own violent kicking and thrashing which caused his fall on the steps of the stationhouse. Id. at 1146–47.

■ From the facts adduced at trial, it is impossible for this Court to conclude that it is more probable that the injury resulted from defendant's negligence than decedent's own actions. Having failed to eliminate decedent's own conduct as a possible cause of the injury, plaintiffs' res ipsa claim must fall.

## III

### TRADITIONAL NEGLIGENCE

■ On the subject of traditional negligence on the part of Richmond's prison officials, two possible theories emerge: (1) that, knowing of Henry's illness, the prison authorities failed to provide decedent with adequate medical treatment,

and this failure resulted in his death; or (2) that they failed in their general duty to exercise reasonable and ordinary care for Henry's safety.

As to the first assertion of negligence, there is no doubt that the officials at Richmond were aware of Henry's physical illness. Liability, however, cannot be based on this knowledge for at least two reasons. First, upon becoming aware that Henry was sick, the prison officials acted reasonably in taking the prisoner to the Charles Memorial Hospital. As reflected in the Emergency Room Record of September 7, 1972, Henry's symptoms were certainly not severe enough to put the authorities on notice that his life was in any way threatened thereby. Indeed, he was not admitted to the hospital, and his temperature and blood pressure were normal. Although Officers Merle and Lewis had to assist Henry in walking on the way to the hospital, decedent required no such assistance on the way back to Richmond.

The only other evidence to appear in the record which might conceivably point to knowledge by the prison authorities that decedent required subsequent medical attention concerns the early morning hours of September 10, 1972. Two witnesses, former Richmond inmates housed at the institution during September, 1972, testified that sometime between 12:00 and 2:00 a.m., on September 10, they heard who they knew to be Wrenford Henry crying out for water and sounding as if he were in distress. This assertion was contradicted by the testimony of a number of guards who were on duty that evening, none of whom acknowledged hearing any such entreaties or cries from the vicinity of cell #28, where Henry was housed. Moreover, Officer Martin, the Assistant Supervisor of the 12:00 to 8:00 a.m. shift at Richmond on September 10, testified that sometime between 6:30 and 7:00 a.m. on that morning, he asked Wrenford Henry if he wanted any breakfast, to which the pris-

733

oner answered in the negative. The officer noted that Henry did not appear to be injured or ill at that time.

Even assuming the fact that Henry's illness was effectively brought to the attention of the officers of the prison, there is no causative link between any neglect by the officers in the face of that knowledge and the death of Wrenford Henry. For, his death most probably resulted from a head injury, rather than either a respiratory disfunction or other malady of which the prison authorities may have become aware.

The final theory of liability to which plaintiffs allude focuses on a violation of the prison's general duty to the prisoner to keep him safe and to protect him from unnecessary harm. See, e.g., Smith v. Miller, 40 N.W.2d 597, 599 (Iowa 1950). With the cause of death in mind, the only possible sources of the head injury were either a fall or a blow to the back of the head. In the case of a fall, there is no liability. In the latter case of a blow to the head, most probably at the hands of another inmate, Section 320 of the Restatement of Torts (Second) sets forth the standard of liability in this jurisdiction. The courts which have cited and interpreted Section 320 have noted that although officers have a duty to protect their prisoners from injury, they are not insurers of the safety of their prisoners. There must be knowledge on the part of the officers that there is danger that such injuries will be inflicted, and they must be negligent in failing to prevent the injury. Harris v. State, 297 A.2d 561, 563 (N.J. 1972); Blakey v. Boos, 153 N.W.2d 305 (S.C. 1967), Restatement of Torts (Second) § 230, comment d; see also Muniz v. United States, 280 F.Supp. 542, 547 (S.D.N.Y. 1968); Annot., 41 A.L.R.3d 1021, § 5 at 1020. In the instant case, the record is devoid of any showing of knowledge on the part of any guard or prison official that any injuries might be intentionally inflicted upon decedent by another inmate, or any indication that they

had good reason to anticipate danger thereof. Given this lack of proof, I cannot find liability in this case.

### JUDGMENT

In accordance with the foregoing Memorandum Opinion and the reasons set forth therein, it is hereby

ORDERED, ADJUDGED and DECREED:

That no liability be assessed against the Government of the Virgin Islands in favor of plaintiffs in the above styled action.