**COASTAL AIR TRANSPORT, Appellant/Defendant**
**v.**
**EDWARD ROYER and FLORENCE ROYER, Appellees/Plaintiffs**
**COASTAL AIR TRANSPORT, Appellant/Defendant**
**v.**
**SMYRNA HAMILTON and ALPHA JOHNSON, Appellees/Plaintiffs**

S. Ct. Civil No. 2015-0028

Supreme Court of the Virgin Islands

June 3, 2016

647

A. WEBSTER MARTIAL, SR., ESQ., Law Office of Martial A. Webster, Sr., St. Croix, USVI, *Attorney for Appellant.*

LEE J. ROHN, ESQ., Law Offices of Lee J. Rohn and Associates, LLC, St. Croix, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; SWAN, *Associate Justice*; CHRISTIAN, *Designated Justice.*[1]

## OPINION OF THE COURT

(June 3, 2016)

HODGE, *Chief Justice.* Appellant Coastal Air Transport appeals from a February 25, 2015 judgment issued in favor of Appellees Edward Royer, Florence Royer,[2] and Smyrna Hamilton ("Passengers"). The Passengers have also cross-appealed from the Superior Court's decision to *sua sponte* remit the jury's award of economic damages to Mrs. Royer. For the reasons that follow, we affirm the Superior Court's decision to deny Coastal Air's motion for judgment as a matter of law, but reverse the remittitur award, and instruct the Superior Court to reinstate the jury's verdict as to Mrs. Royer's damages.

## I. BACKGROUND

On June 19, 2004, the Royers, Hamilton, and Alpha Johnson were traveling on a Coastal Air aircraft piloted by Michael Foster from St. Croix to Dominica along with several other individuals. After the aircraft landed in Nevis for an intermediate stop, Foster opened the door of the aircraft, disembarked, and accompanied some passengers to the terminal. He left the Royers, Hamilton, Johnson, and some other passengers to wait in the aircraft on the runway. While awaiting Foster's return from the

---

[1] Associate Justice Maria M. Cabret is recused from this matter. The Honorable Adam G. Christian, judge of the Superior Court of the Virgin Islands, sits in her place by designation pursuant to title 4, section 24(a) of the Virgin Islands Code.

[2] For simplicity, because Edward Royer and Florence Royer share the same last name as husband and wife, we refer to them by Mr. Royer and Mrs. Royer, respectively.

terminal, Mr. Royer stepped out of the aircraft for momentary relief from the heat inside. Mr. Royer reentered the aircraft when he saw Foster walking swiftly back to the aircraft. Foster then boarded the aircraft, closed the door, gave the passengers briefing instructions, and took off for Dominica. Shortly after departure, the passengers noticed a strange noise coming from the door of the cabin, when suddenly, the upper component of the door flew open. The Passengers described that, at that time, they were scared for their lives as they saw the door's insulation fly out of the aircraft. Mr. Royer got out of his seat, reached out of the aircraft, and tried to close the door. Mrs. Royer, fearful that Mr. Royer might fall, unbuckled her seatbelt and held on to her husband's pants, causing Hamilton to get out of her seat to assist by holding onto Mrs. Royer.

After noticing that the door had partially opened, Foster flew the aircraft down to a safe altitude where Mr. Royer was able to close the door of the aircraft. Unfortunately, there was no latch to keep the door closed so Mr. Royer held onto the door with both hands for the remainder of the flight. Foster testified at trial that because of the loud noise coming from the open door, he was unaware of the commotion that took place at the back of the aircraft until notified by a passenger. Foster told the notifying passenger that there was nothing to worry about because it was not a dangerous situation and to stay seated with her seatbelt fastened and that he "expected her to pass the information back to the people in the back of the aircraft." The Passengers were not advised of Foster's instruction and kept holding onto the door for the remainder of the flight. Fortunately, the aircraft landed safely in Dominica.

Hamilton, Johnson, and the Royers filed suit in the Superior Court against Coastal Air for negligence.[3] After a four-day trial, the jury found that Coastal Air was negligent as to all four defendants and that its negligence was the proximate cause of the injuries sustained by the Royers and Hamilton. The jury did not find, however, that Coastal Air's negligence was the proximate cause of Johnson's injuries and awarded him no damages. As for the remaining parties, the jury awarded: Mr. Royer's Estate $30,000 in economic damages and $75,000 in non-economic damages; Mrs. Royer $50,000 in economic damages and $50,000 in non-economic damages; and Hamilton $20,000 in economic damages and $10,000 in non-economic damages.

---

[3] Mr. Royer passed away in 2012 before this case proceeded to trial in November 2013.

Following the jury's verdict, Coastal Air filed a motion for a judgment as a matter of law on November 22, 2013. Fifteen months later on February 25, 2015, the Superior Court entered its final judgment and order denying Coastal Air's motion, and exercised its remittitur power to decrease Mrs. Royer's economic damages award from $50,000 to $12,156 and decrease the economic damages of the Estate of Mr. Royer from $30,000 to $13,000. Coastal Air timely filed its notice of appeal with this Court on March 19, 2015, *see* V.I.S.CT.R. 5(a)(1), while the Passengers timely filed their notice of cross-appeal on April 7, 2015, *see* V.I.S.CT.R. 5(a)(3) ("If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date on which the first notice of appeal was filed.").[4]

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

■ This Court has appellate jurisdiction over "all appeals from the decisions of the courts of the Virgin Islands established by local law." 48 U.S.C. § 1613a(d); *see also* 4 V.I.C. § 32(a) (granting this Court jurisdiction over "all appeals arising from final judgments, final decrees or final orders of the Superior Court"). Because the Superior Court's February 25, 2015 judgment is a final order adjudicating all of the issues between the parties, this Court has jurisdiction over Coastal Air's appeal as well as the Passengers' cross-appeal.[5] *Malloy v. Reyes*, 61 V.I. 163, 171 (V.I. 2014).

---

[4] Ordinarily, Supreme Court Rule 5(a)(3) would have required the Royers to file their notice of cross-appeal on April 3, 2015. However, because April 3, 2015, was the legal holiday of Good Friday, which was then immediately followed by the legal holiday of Easter Monday, the deadline for the Royers to file their cross-appeal was automatically extended to April 7, 2015. *See* V.I.S.CT.R. 16(b).

[5] This Court has previously recognized that, when a trial court has ordered remittitur, the remittitur order is ordinarily not immediately appealable, since a plaintiff who accepts a remittitur is estopped from appealing the reduced judgment, while a plaintiff who refuses a remittitur may not appeal that decision until a new trial on damages has concluded. *Antilles Sch. v. Lembach*, 64 V.I. 400, 436-437 (V.I. 2016) (collecting cases). However, in this case the Superior Court did not grant the Royers the option of accepting a new trial on damages in lieu of the reduced judgment. Consequently, the Superior Court's remittitur decision is final and may be immediately appealed by the Royers. *See Chavez-Rey v. Miller*, 1982-NMCA-187, 99 N.M. 377, 658 P.2d 452, 454 (1982) (holding an order granting remittitur is appealable when "the court's order granting remittitur did not permit plaintiff the alternative of either submitting to a new trial or accepting the remittitur").

This Court examines the Superior Court's application of law *de novo*, while the trial court's factual findings are reviewed for clear error. *Moorhead v. Mapp*, 62 V.I. 595, 598-99 (V.I. 2015) (citing *Rawlins v. People*, 58 V.I. 261, 268 (V.I. 2013)).

## B. Judgment as a Matter of Law

■ Coastal Air first argues that it is entitled to judgment as a matter of law because the Passengers failed to introduce sufficient evidence at trial to justify the jury's verdict. A party will succeed on a claim that it is entitled to judgment as a matter of law if the reviewing court, after considering all evidence and drawing all fair and reasonable inferences in the nonmoving party's favor, concludes that no reasonable jury could find in favor of the opposing party. *Kendall v. Daily News Publ'g Co.*, 55 V.I. 781, 786-87 (V.I. 2011). "In performing this narrow inquiry, [courts] must refrain from weighing the evidence, determining the credibility of witnesses, or substituting [their] own version of the facts for that of the jury." *Chestnut v. Goodman*, 59 V.I. 467, 475 (V.I. 2013) (quoting *Corriette v. Morales*, 50 V.I. 202, 205 (V.I. 2008)).

■ This Court has previously established that, "the foundational elements of negligence" are: "(1) a legal duty of care to the plaintiff, (2) a breach of that duty of care by the defendant (3) constituting the factual and legal cause of (4) damages to the plaintiff." *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 380 (V.I. 2014) (citations omitted). Coastal Air's entire argument is predicated on its assertion that the Passengers did not prove that Mr. Royer was not the factual and proximate cause of the Passengers' damages, and it offers an alternative theory of what actually occurred on the flight. By doing so, it misconstrues the Passengers' burden of proof. The Passengers had no duty to prove the absence of contributory fault; instead, they were required only to prove by a preponderance of the evidence that Coastal Air owed a duty of care to the Passengers, that it breached that duty, and that they suffered damages that were factually and legally caused by Coastal Air. *Id.*

 Clearly, as a carrier of passengers by air, Coastal Air owed the Passengers a duty[6] to exercise reasonable care. As such, we next examine the facts of this case to determine whether the Passengers satisfied all the necessary elements of a negligence claim. But, before we do so, because the jury was instructed on the doctrine of *res ipsa loquitur* using the word-for-word language of the Restatement of Torts' doctrine of *res ipsa loquitur*[7] and in the interest of judicial economy, we consider whether the doctrine represents the soundest rule for the Virgin Islands.[8] *Simon v.*

---

[6] We note that Coastal Air is "a commercial enterprise that holds itself out to the public as offering to transport freight or passengers for a fee," and as such, may be a "common carrier" for purposes of tort liability. BLACK'S LAW DICTIONARY 226 (8th ed. 2004); 13 AM. JUR. 2D *Carriers* § 2. Although this Court has yet to determine whether common carriers in the Virgin Islands owe a heightened duty to their passengers, because this case was tried under the elements for negligence as outlined in *Machado*, and was tried prior to this court's ruling in *Gov't of the V.I. v. Connor*, 60 V.I. 597, 603 (V.I. 2014) — where we held that courts must consider three non-dispositive factors to determine Virgin Islands common law — we review for error under the elements of ordinary negligence.

[7] RESTATEMENT (SECOND) OF TORTS § 328D (1965) on *res ipsa loquitur* provides that:

(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when

(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

(2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.

(3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached.

[8] In *Connor*, we recognized that "the [Virgin Islands] Legislature implicitly repealed 1 V.I.C. § 4 through its adoption of 4 V.I.C. § 21." 60 V.I. at 600 (citing *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 979 (V.I. 2011)); *Machado*, 61 V.I. at 396 (citing *Banks*, 55 V.I. at 978); *Malloy*, 61 V.I. at 176; *King v. Appleton*, 61 V.I. 339, 349 (2014) (citing *Banks*, 55 V.I. at 978); *Walters v. Walters*, 60 V.I. 768, 777 n.11 (V.I. 2014) (citing *Banks*, 55 V.I. at 974-80); *Simon v. Joseph*, 59 V.I. 611, 622 & n.11 (V.I. 2013). "In making these observations, we referenced our prior decisions holding that 'mechanistic and uncritical reliance on the Restatements' pursuant to former 1 V.I.C. § 4 'has the effect of inappropriately delegating the judicial power of the Virgin Islands to the American Law Institute and to the governments of other jurisdictions.' " *Vanterpool v. Gov't of the V.I.*, 63 V.I. 563, 579 (V.I. 2015) (quoting *Connor*, 60 V.I. at 602; citing *Dunn v. HOVIC*, 1 F.3d 1371, 1392, 28 V.I. 467 (3d Cir. 1993)); *Bertrand v. Mystic Granite & Marble, Inc.*, 63 V.I. 772, 783 n.5 (V.I. 2015) ("[T]he Restatements no longer hold an automatic preferred status in Virgin Islands law, but as in all other

*Joseph*, 59 V.I. 611, 622 (V.I. 2013) (citing *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 979 (V.I. 2011) (outlining the three-factor analysis to determine sound Virgin Islands' common law)); *Gov't of the V.I. v. Connor*, 60 V.I. 597, 603 (V.I. 2014) (determining that the Supreme Court could conduct a *Banks* analysis in the interest of judicial economy (citing *Browne v. Gore*, 57 V.I. 445, 453 n.5 (V.I. 2012))). To make such an assessment, we first look to previous decisions of Virgin Islands' courts to determine what rule — if any — was applied in the past. *Simon*, 59 V.I. at 622-23. Second, we consider what rule a majority of courts from other jurisdictions apply. *Id.* at 623-25. Finally, and of greatest weight in the three factor analysis, we determine what approach represents the most well-suited rule for the Territory. *Id.* at 623, 625-28.

With respect to the first factor of the analysis, the application of *res ipsa loquitur* in Virgin Islands case law, as provided in the Restatement of Torts, has been generally accepted and frequently used for the procedural effect of creating a permissible inference which the jury may choose to draw, unless no reasonable person could reject it. *See, e.g., Mercado v. Gov't of the V.I.*, Super. Ct. Civ. No. 123/2009 (STT), 2012 V.I. LEXIS 2, at \*12 (V.I. Super. Ct. Jan. 5, 2012) (unpublished); *Durgah v. Moolenaar*, 21 V.I. 244, 249 (V.I. Super. Ct. 1985); *Thomas v. Gov't of the V.I.*, 14 V.I. 545, 547-48 (V.I. Super. Ct. 1978); *Hubschman v. Antilles Airboats, Inc.*, 440 F. Supp. 828, 853-57, 14 V.I. 366 (D.V.I. 1977); *Todman v. Gov't of the V.I.*, 14 V.I. 593, 596-600 (V.I. Super. Ct. 1978); *Henry v. Gov't of the V.I.*, 11 V.I. 727, 731-32 (D.V.I. 1977). Second, most United States jurisdictions apply the Restatement approach, with some distinctions as to the procedural effect. The great majority of those cases are in line with past Virgin Islands precedent treating *res ipsa loquitur* as creating nothing more than a permissible inference; others "give *res ipsa loquitur* the effect of a presumption, which requires a directed verdict for the plaintiff if the defendant offers no evidence to rebut it," and a small minority treat it "as imposing the burden of proof upon the defendant." RESTATEMENT (SECOND) OF TORTS § 328D cmts. a & m (1965); *see also* Alan H. Konig, *Tort Law — Res Ipsa Loquitur in Medical Malpractice Actions: Mireles v. Broderick*, 23 N.M. L. REV. 411, 413 n.13 (1993) (noting that most

---

jurisdictions, merely represent persuasive authority, just like law review commentaries and decisions rendered by courts outside of the Virgin Islands." (quoting *Connor*, 60 V.I. at 602 and *Brunn v. Dowdye*, 59 V.I. 899, 911 n.10 (V.I. 2013))).

American jurisdictions apply the Restatement approach to the doctrine of *res ipsa loquitur*).

Lastly with respect to the final and most important factor, we consider the historical roots and application of the doctrine. *Res ipsa loquitur* is Latin for "the thing speaks for itself" and the doctrine is generally believed to have been developed from a statement made by Baron Pollock in 1863, in a case involving a barrel of flour that rolled out of a building window landing on a passerby's head. RESTATEMENT (SECOND) OF TORTS § 328D cmt. a (1965) (citing *Byrne v. Boadle*, 159 Eng. Rep. 299 (Ex. 1863)). At the outset of its application, the principle was considered a mere rule of evidence, allowing the jury to infer that because an unusual event occurred, the defendant was at fault. RESTATEMENT (SECOND) OF TORTS § 328D cmt. a (1965). Sometime later, however, this once-rule of evidence "became confused, in cases of injuries to passengers at the hands of carriers, with the older rule which placed the burden of proof upon the carrier to show that its negligence had not caused the injury." *Id.* This confusion explains the split among the jurisdictions as to "whether the doctrine [when applicable] gives rise to a true presumption of law or to a mere inference of fact." P.H. Vartanian, Annotation, *"Res ipsa loquitur" as a presumption or a mere permissible inference*, 167 A.L.R. 658 (1947 & 2016 rev.) (conducting a nationwide survey of *res ipsa loquitur* rules); RESTATEMENT (SECOND) OF TORTS § 328D cmt. a (1965). It is most commonly considered to be attributed to late nineteenth and early-twentieth century case law's "inadvertent use of terminology, without a conscious effort to analyze the legal significance or consequences of a characterization of the doctrine as giving rise to a presumption, when the most that was necessary to hold was that an inference of negligence was permissible, sufficient to warrant or to justify a verdict" in favor of the plaintiff. 167 A.L.R. 658; *see, e.g., Crooks v. White*, 107 Cal. App. 304, 290 P. 497, 500 (1930) (recognizing that "the inaccurate use by courts of the word 'presumption' when the word 'inference' was intended, has led to some confusion. . . . these words have been frequently used by the courts interchangeably"); *Black Mountain Corp. v. Partin*, 243 Ky. 791, 49 S.W.2d 1014, 1017 (1932) (same); *George Foltis, Inc. v. City of New York*, 287 N.Y. 108, 38 N.E.2d 455, 462-63 (1941) (same).

Fortunately, through time, courts have "had more occasion to consider the legal significance of the distinction between presumption and inference" and have been wary of interchanging the language. 167 A.L.R.

658. And, "in practically all" of the cases where the courts have "analyze[d] the legal distinction," the courts concluded that "the doctrine merely permits, and does not compel [a] jury to find the defendant negligent." *Id.; see, e.g., Atchison, T. & S. F. Ry. Co. v. Simmons*, 153 F.2d 206, 208 (10th Cir. 1946); *Nashville, C. & St. L. Ry. Co. v. York*, 127 F.2d 606, 608-09 (6th Cir. 1942); *Pickwick Stages Corp. v. Messinger*, 36 P.2d 168 (Ariz. 1934); *Mudrick v. Mkt. St. Ry. Co.*, 11 Cal. 2d 724, 81 P.2d 950, 955 (1938); *Klatt v. Hoboken Bank for Sav.*, 126 N.J.L. 96, 18 A.2d 602, 603 (1941). The chief distinction between permitting a jury to merely infer negligence rather than allowing it to presume such negligence, is not to be taken lightly. If the doctrine of *res ipsa loquitur* were deemed to give rise to a *presumption*, should the defendant not present rebuttal evidence, the trial court would correctly act to enter directed verdict in plaintiff's favor on the issue of negligence. 167 A.L.R. 658. However, should the doctrine give rise only to an inference, negligence remains a matter for the jury to decide even if the defendant does not present contrary evidence, because the jury is not compelled to presume negligence; instead, jurors are permitted to draw that conclusion on their own, based on the facts presented. *Id.* Thus, if the jury were to conclude that the plaintiff has not met his burden of proof (because they could not draw that inference) it may return a verdict in favor of the defendant. Moreover, in matters where negligence is presumed, once the defendant introduces evidence to the contrary, the presumption disappears, and the plaintiff must then rely on independent evidence to meet its burden; but, when an *inference* is permitted to be drawn, the ability to infer negligence remains — even with differing evidence admitted by the defendant. *Montgomery v. Hutchins*, 118 F.2d 661, 664-65 (9th Cir. 1941).

 Given this jurisdiction's strong policy to permit juries to come to rational conclusions, rather than be instructed to do so by the court, *see Chestnut*, 59 V.I. at 475, we hold that the principle of *res ipsa loquitur* as applied in RESTATEMENT (SECOND) OF TORTS § 328D and the majority procedural approach represents the most apt rule for the Virgin Islands, such that a jury is permitted to infer a defendant's negligence from the happening of an extraordinary event under the defendant's control, rather than being compelled to find negligence in absence of evidence to the contrary.

Taking this into consideration, we review the record to determine whether a rational juror could have inferred that Coastal Air breached its

standard of care because it found that the event on the plane was of a kind that "ordinarily does not occur in the absence of negligence," that other "responsible causes, including the conduct of the [Passengers] and third persons, [were] sufficiently eliminated by the evidence" and that the negligence "[was] within the scope of [Coastal Air's] duty to the [Passengers]." RESTATEMENT (SECOND) OF TORTS § 328D.

■ The evidence adduced at trial established that just minutes after the aircraft left Nevis en route to Dominica, the door of the aircraft partly flew open. Surely, a passenger carrier aircraft's door will not "ordinarily" fly open mid-flight absent a party's negligence or the act of an intervening third party. *See Watts v. Richmond, Fredericksburg & Potomac R.R. Co.*, 189 Va. 258, 52 S.E.2d 129, 135 (1949) (finding that the doctrine of *res ipsa loquitur* appropriate where a passenger fell through the open door of a train). Thus, a rational juror could have found that the first factor was satisfied.

As to the second factor, elimination of other causes, Coastal Air seemingly argues that Mr. Royer was not eliminated as a potential cause of the door flying open, alleging that because he was seated closest to the door "[he] must have unintentionally moved the locking mechanism." (Appellant's Br. 14.) Although there was no evidence presented as to this assertion, Coastal Air contends that it can be inferred "from the fact that [Mr. Royer] did not notify the captain of the aircraft that he . . . was leaving his seat in an attempt to close the door after the aircraft captain had already reduced speed." (Appellant's Br. 14.) This argument is essentially the same as that considered by the Supreme Court of Virginia in *Watts* where the "defendant urg[ed] that the doctrine . . . is not applicable to the facts of this case because the train and the vestibule doors were not under its exclusive control, it being possible for the passengers to open the doors." 52 S.E.2d at 132. After review of its previous decisions, the court there noted that "if the jury believed [that]the plaintiff fell from the vestibule door" and there is "no evidence" showing "when the door was opened or by whom . . . [t]he cause of the existence of the conditions which resulted in the accident is then wholly unexplained[,] [yet] . . . the doctrine of *res ipsa loquitur* [still] applies to a case of this kind." *Id.* at 135. In this case, unlike *Watts*, there was affirmative evidence that Mr. Royer could not have opened the door because it was explained that he was unable to reach it from where he was seated, and he had not left his seat after Foster last touched the door. As

656

a result we conclude that the final factor is met because the duty to ensure that aircraft doors do not randomly open mid-flight is sufficiently encompassed in Coastal Air's duty to provide for the safety of its passengers. Accordingly, a rational juror could have reasonably inferred that Coastal Air breached its duty of care to the Passengers.

Turning to causation and damages, the evidence presented at trial established that after the door opened, the Passengers, being fearful for their safety, stood up to attempt to close the doors and as a result they suffered injuries. It is clear that but for the door flying open due to Coastal's Air's negligence, and there being no other intervening cause, the Passengers would not have attempted to get out of their seats to close the door of the aircraft or hold on to keep it closed and thereby causing them to suffer injuries. Because a rational jury could have found that all elements of negligence were satisfied, Coastal Air's request for judgment as a matter of law was properly denied. *Kendall*, 55 V.I. at 786-87.

## C. Warsaw Convention

Coastal Air next contends that the Passengers claims "are limited and/or barred by the Warsaw Convention"[9] because the Passengers failed to show how the incident on the June 2004 flight amounted to an "accident" under the Convention. We hold that Coastal Air waived this argument.

■ As this Court has already recognized that, "invocation of the Warsaw Convention is an affirmative defense" and as such Coastal Air was required to plead the defense in its first responsive pleading. *Maduro v. Am. Airlines, Inc.*, S. Ct. Civ. No. 2007-0029, 2008 V.I. Supreme LEXIS 24, at *8 n.4 (V.I. Feb. 28, 2008) (unpublished); *cf. Rennie v. Hess Oil Virgin Islands Corp*, 62 V.I. 529, 536-37 (V.I. 2015) (noting that affirmative defenses ought to be raised in the first responsive pleading or be subject to waiver). Generally, courts impose waiver because the "defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense." *Ingraham v. United States*, 808 F.2d 1075, 1079 (5th Cir. 1987) (citations omitted).

■ Coastal Air failed to raise the affirmative defense of the Warsaw Convention in its first responsive pleading — and this alone is sufficient

---

[9] Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, 137 L.N.T.S. 11.

to constitute a waiver. *Rennie*, 62 V.I. at 537. It was not until Coastal filed an "Informative Motion" the day before trial that it first raised the defense. In this motion, it asserted that "the Warsaw Convention Treaty of 1929, as amended, and later the Montreal Convention,[10] governs the limitations on damages in this case." (J.A. 88.) When arguing the motion before the Superior Court, however, Coastal Air limited its argument to the damages in regards to Alpha Johnson. It was not until this appeal that Coastal Air challenged that the damages should be limited as to the Passengers pursuant to the Montreal Convention.[11]

Even if this Court were to overlook the fact that the affirmative defense of the Montreal Convention was not raised in Coastal Air's first responsive pleading, when the issue was presented to the trial court, it was presented to limit only Johnson's damages. The jury's decision to not award damages to Johnson obviated the need for the Superior Court to consider Coastal Air's motion to limit Johnson's damages, and it was never given the opportunity to consider limiting the Passengers' damages. Because this issue was raised for the first time on appeal as to the Passengers, and we are concerned with such attempts by parties to circumvent the procedural rules resulting in prejudice to opposing parties when they do not timely raise appropriate defenses, we conclude that Coastal Air waived any possible Montreal Convention challenge in this case. *See Ottley v. Estate of Bell*, 61 V.I. 480, 492 (V.I. 2014) (noting that affirmative defenses are waived if not raised at the first opportunity in the Superior Court); *see also Pedro v. Ranger Am. of the V.I., Inc.*, 63 V.I. 511, 518, 519 (V.I. 2015) (defendant is required to "plead and prove" affirmative defenses, which "must be raised by a defendant in its answer"); *Yusuf v. Hamed*, 59 V.I. 841, 851 n.5 (V.I. 2013) ("To preserve an objection on appeal, a party must object on the specific grounds raised on appeal." (citing *United States v. Gallo-Chamorro*, 48 F.3d 502, 507 (11th Cir. 1995))); *Simpson v. Golden*, 56 V.I. 272, 280-81 (V.I. 2012) ("The rules that require a litigant to brief and support his arguments . . .

---

[10] Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106-45, 2242 U.N.T.S. 309.

[11] This incident arose on June 19, 2004, after the Montreal Convention took effect. *See Bower v. Egyptair Airlines Co.*, 731 F.3d 85, 89 n.6 (1st Cir. 2013) (noting that the Montreal Convention entered into force on November 4, 2003); *Ehrlich v. American Airlines, Inc.*, 360 F.3d 366, 372 (2d Cir. 2004) (same). Therefore, Coastal Air's argument is properly assessed under the Montreal Convention, not the Warsaw Convention.

exist to give the Superior Court the opportunity to consider, review, and address an argument before it is presented to this Court. That requirement permits the Superior Court to develop the record so that, in the event of an appeal, this Court can then make informed rulings. That requirement also limits the number of issues appealed by providing the Superior Court the opportunity to address and correct any purported mistakes by bringing them to its attention first."); V.I.S.CT.R. 4(h) ("Only issues and arguments *fairly* presented to the Superior Court may be presented for review on appeal" (emphasis added)).

## D. Remittitur

 On cross-appeal, the Passengers contend that the Superior Court erred when it remitted the future economic damage award to Mrs. Royer *sua sponte*. The trial court opined that the evidence in the record was insufficient to award future damages, as testimonial and documentary evidence supported only an award of past — not future — medical expenses. This Court has recently considered the common-law doctrine law of remittitur wherein courts may "reduce the damages award indicated in a jury verdict after concluding that 'no rational jury, acting on the basis of the full evidentiary record, and without being inflamed by passion or prejudice or other improper consideration, could have awarded such a large sum as damages.' " *Antilles Sch. v. Lembach*, 64 V.I. 400, 427 (V.I. 2016) (quoting *Thomas Hyll Funeral Home, Inc. v. Bradford*, 233 F. Supp. 2d 704, 710 (D.V.I. App. Div. 2002)). In *Antilles School*, we determined that even though a majority of United States jurisdictions have adopted the doctrine, "remittitur does not represent the soundest rule for the Virgin Islands" because it is completely at odds with our "long-standing jurisprudence that questions of fact should be resolved by a jury, that a jury's factual determinations should be respected so long as there is a sufficient evidentiary basis, and that it is not the role of a judge to weigh the evidence when it has been submitted to a jury for a determination." 64 V.I. at 433 (citing *Fahie v. People*, 62 V.I. 625, 636 (V.I. 2015); *Joseph v. Hess Oil V.I. Corp.*, 54 V.I. 657, 667 (V.I. 2011)). As a result, we concluded that a jury's verdict may be "altered by a judge only if it is not supported by sufficient evidence in the record, or if a reduction is compelled under the United States Constitution." *Id.* at 438 (citing *Honda Motor Co. v. Oberg*, 512 U.S. 415, 432, 114 S. Ct. 2331, 129 L. Ed. 2d 336 (1994)).

 In this case, it does not appear that the Superior Court determined that the evidence was insufficient to support the jury's damages award; rather, by its own admission it weighed the evidence and determined that the award "shocks the judicial conscience." (J.A. 13.) Nor did the Superior Court determine that the damages awarded by the jury were so excessive so as to violate the Due Process Clause of the Fifth or Fourteenth Amendments to the United States Constitution. But even though the Superior Court arrived at its remittitur decision by engaging in judicial factfinding to reweigh the evidence, the Superior Court failed to employ the remittitur procedure correctly since it summarily reduced the jury's damages award without providing Mrs. Royer with the option of a new trial in lieu of accepting the reduced award. *Antilles Sch.*, 64 V.I. at 428 (citing *James v. Fitzpatrick*, 25 V.I. 124, 126 (V.I. Super. Ct. 1990)); *see also Chavez-Rey v. Miller*, 1982-NMCA-187, 99 N.M. 377, 658 P.2d 452, 454 (1982) (citations omitted). However, given our decision in *Antilles School* to not recognize remittitur in the Virgin Islands, we need not remand this matter to provide Mrs. Royer with that option, and instead, we reverse the Superior Court's grant of remittitur and direct it, on remand, to restore the jury's original damages award to Mrs. Royer. With respect to Mr. Royer, because his estate has failed to appeal the Superior Court's remitted award to him, we do not disturb the trial court's decision to remit. *See, e.g., Percival v. People*, 62 V.I. 477, 487 (V.I. 2015) (noting that this Court will not grant greater relief on appeal than was sought at trial, in the absence of a cross-appeal (citing *Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 761-62 (V.I. 2014))).

### III. CONCLUSION

For the aforementioned reasons, we conclude the Superior Court's decision to deny Coastal Air's motion for judgment as a matter of law is affirmed, and that Coastal Air waived any claims it may have had under the Montreal Convention. Finally, we reverse the Superior Court's decision to *sua sponte* reduce the jury's damages award to Mrs. Royer based on its own weighing of the evidence.