IN THE SUPREME COURT
OF THE VIRGIN ISLANDS

**FILED**

January 29, 2025 02:23 PM
SCT-CIV-2020-0015
VERONICA HANDY, ESQUIRE
CLERK OF THE COURT

**For Publication**

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

| | |
|---|---|
| **IN RE: MICHAEL SHEESLEY, ESQ.** )<br> Appellant, ) | **S. Ct. Civ. No. 2020-0015**<br>Re: Super. Ct. Civ. No. 599/2008 (STX) |

**IN RE: MICHAEL SHEESLEY, ESQ.**　　)　　**S. Ct. Civ. No. 2020-0015**
　　Appellant,　　　　　　　　　　)　　Re: Super. Ct. Civ. No. 599/2008 (STX)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
**LEONOR MERCEDES PALERMO,**　　)
　　Plaintiff-Appellee,　　　　　　)
　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
**WORLD FRESH MARKET, LLC f/k/a**　)
**PUEBLO SUPERMARKETS,**　　　　　)
　　Defendant.　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)

On Appeal from the Superior Court of the Virgin Islands
Division of St. Croix
Superior Court Judge: Hon. Robert A. Malloy

Argued: December 8, 2020
Filed: January 29, 2025

Cite as: 2025 V.I. 5

**BEFORE:** **RHYS S. HODGE**, Chief Justice; **MARIA M. CABRET**, Associate Justice; and **IVE ARLINGTON SWAN**, Associate Justice.

**APPEARANCES:**

**Daniel L. Cevallos, Esq.**
Cevallos & Wong, LLP
New York, N.Y.
　　*Attorney for Appellant*,

**Rhea R. Lawrence, Esq.**
Lee J. Rohn & Associates, LLC
St. Croix, U.S.V.I.
　　*Attorney for Appellee.*

## OPINION OF THE COURT

**SWAN, Associate Justice.**

¶1    Michael Sheesley ("Sheesley") appeals the Superior Court's imposition of Virgin Islands Rules of Civil Procedure, Rule 11 sanctions against him. Sheesley likewise appeals the court's denial of his motion to reconsider the court's imposition of Rule 11 sanctions. For the reasons elucidated below, we affirm the court's imposition of sanctions against Sheesley as well as the court's denial of Sheesley's motion to reconsider the sanctions.

### I.    FACTS AND PROCEDURAL HISTORY

¶2    On September 1, 2008, Leonor Palermo ("Palermo") and her friend, Valentina de la Cruz ("de la Cruz"), went to shop at Pueblo Supermarket in Golden Rock ("Pueblo Golden Rock") in St. Croix, U.S. Virgin Islands. As she shopped in the dairy department, Palermo slipped and fell on rainwater that had seeped from a Styrofoam cooler placed under a leak in the store's roof. After falling, but before leaving the store, Palermo and de la Cruz allegedly spoke with Antonio Maysonet ("Maysonet"), Assistant Manager of Pueblo Golden Rock. After the disputed conversation, Palermo departed the supermarket and eventually went to the hospital, seeking medical attention for pain she incurred from the mishap. On September 2, 2008, Palermo, together with de la Cruz, returned to Pueblo Golden Rock to provide management with Palermo's contact information. During the September 2, 2008 meeting, Palermo remained in a vehicle while de la Cruz allegedly provided Palermo's information to Maysonet. On September 2, 2008, the management of Pueblo Golden Rock generated an incident report about Palermo's accident.

¶3     On December 5, 2008, Palermo initiated a civil suit against World Fresh Market, LLC ("World Fresh"),[1] the owner of the Virgin Islands Pueblo franchise. On August 21, 2012, the Law Offices of Rohn & Cameron, Palermo's attorney, deposed Jorge Coppin, Pueblo Golden Rock Store Director, and Osama Nakhleh, World Fresh Office Coordinator and Logistics Officer. At the depositions, Coppin testified that Maysonet was absent from the Pueblo Golden Rock store on September 1, 2008, and Nakhleh asserted that he did not know whether Maysonet was present on the day of Palermo's accident. Similarly, on February 5, 2013, Theodore Patterson, World Fresh Information Technology Officer, testified by deposition that Maysonet may not have been at the supermarket on September 1, 2008 when Palermo fell.

¶4     On February 6, 2013, Sheesley deposed de la Cruz. At the deposition, de la Cruz testified that — on the day of Palermo's fall — she searched for management personnel at the Pueblo Golden Rock store to assist Palermo after she fell. De la Cruz said that she encountered a Hispanic manager named Tony who returned with her to the site of Palermo's accident. According to de la Cruz, Tony spoke with Palermo and offered her some medicated ointment. De la Cruz further testified that she spoke with Tony again on September 2, 2008 when Tony gave her a paper which presumably was the incident report. When asked if Tony was Antonio Maysonet, de la Cruz confirmed that Maysonet was Tony's last name.

¶5     On October 15, 2019, Sheesley filed, under the Virgin Islands Rules of Civil Procedure, a supplemental Rule 26 disclosure which asserted that Antonio Maysonet had information about the facts and Pueblo's defenses in the litigation. At an October 28, 2019 pre-trial hearing, Attorney Lee Rohn ("Rohn") raised with the court and Sheesley the legitimacy of the Rule 26 disclosure for

---

[1] Routinely, the opinion switches between World Fresh Market and Pueblo Supermarket to denote the same entity.

Maysonet. Specifically, Rohn questioned what information Maysonet had when Coppin, Guzman, and Patterson all stated he was either absent or may not have been at Pueblo Golden Rock when Palermo's accident occurred on September 1, 2008. After reviewing Rule 26 and de la Cruz's deposition testimony, the court allowed Rohn to depose Maysonet because of Sheesley's insistence that de la Cruz testified that both she and Palermo spoke to Maysonet on September 1, 2008, and to cure any potential prejudice to the plaintiff. Importantly, at his October 29, 2019 deposition, Maysonet testified that he did not recall anything from September 1, 2008, that he did not know Palermo, that he did not write the incident report about Palermo's accident, and that he did not know about Palermo's suit against World Fresh. Maysonet further asserted that he first learned of Palermo's suit the day before his deposition when Sheesley emailed him, and he spoke to Sheesley for the first time about Palermo's suit 45 minutes before his deposition began.

¶6     On November 5, 2019, plaintiff filed a motion for sanctions against Sheesley, as counsel of record for World Fresh, claiming that he violated Rule 11 of the Virgin Islands Rules of Civil Procedure when he misrepresented that Maysonet had discoverable information about the litigation. Rohn asked the court to impose sanctions under either Rule 11 or its inherent powers. On November 22, 2019, Sheesley filed an opposition to plaintiff's motion for sanctions. Sheesley's opposition to the motion stated that plaintiff's counsel had known about Maysonet's potential as a witness, since Valentina de la Cruz's February 6, 2013 deposition, in which she identified Maysonet as the person with whom she and Palermo may have conversed on September 1 and 2, 2008 after Palermo's accident. Although Sheesley objected to the motion for sanctions on the grounds that it was "not based on any sound legal principles or basis," and "was filled with misrepresentations," and he further contended that it "must be denied as improper and not

supported by any facts," Sheesley failed to specifically address, by citing and discussing applicable case law precedent, whether the sanctions sought in the motion could be imposed under Rule 11 or the Superior Court's inherent powers. (J.A. Vol. 2, Part 2 558-59).

¶7     On January 23, 2020, the court held a hearing to decide numerous issues in Palermo's suit, including plaintiff's motion for sanctions. On that issue, the court permitted oral arguments from both parties. Rhea Lawrence appeared for the plaintiff and said that plaintiff's counsel felt compelled to depose Maysonet because of Sheesley's assertions in the October 2019 Rule 26 disclosure that Maysonet had pertinent information germane to the litigation. Lawrence further argued that, under Rule 11, Sheesley was required to perform some degree of due diligence and complete a basic inquiry into Maysonet's knowledge of the litigation and his knowledge of the facts and circumstances of Palermo's accident.

¶8     Appearing on his own behalf, Sheesley said he thought Rule 26 required a specific Rule 26 disclosure to enable a witness to testify. However, Sheesley admitted that there is latitude in Rule 26 that allows a witness to testify without a Rule 26 disclosure, if the witness was identified during discovery or in a deposition, and the opposing party had notice of the witness. Sheesley also stated that he could have called Maysonet to testify as a Rule 30(b)(6) witness without Maysonet being deposed. Despite Sheesley's assertions, the court decided to sanction him. The court opined that Sheesley was required to engage Maysonet in rudimentary conversation to ascertain the extent of Maysonet's knowledge as it related to the litigation. Observing that Sheesley did not discuss the case with Maysonet until 45 minutes before Maysonet's October 29, 2019 deposition, the court stated that Sheesley failed to perform his due diligence duties as required by Rule 11 prior to filing the supplemental Rule 26 witness disclosure and that, because of his omission, Sheesley wasted

the time of the court and opposing counsel. Accordingly, the court granted plaintiff's motion for sanctions under Rule 11.

¶9     On January 28, 2020, the court entered an order memorializing its January 23, 2020 order imposing Rule 11 sanctions against Sheesley.

¶10     On February 12, 2020, Sheesley filed a motion to reconsider the court's sanctions order. Among other issues raised in the motion to reconsider, Sheesley argued that the court improperly imposed sanctions under Rule 11(c)(1) rather than Rule 26. In a February 13, 2020 order, the court denied Sheesley's motion to reconsider. It opined that a motion to reconsider prevails only if an intervening change of law has occurred, new evidence was obtained, a need exists to correct a clear legal error, or the court failed to address a legal issue prior to its ruling. The court cited five principal reasons for its decision, including Sheesley's failure to object to imposing sanctions under Rule 11 instead of Rule 26, the failure of Sheesley's motion to state any legal authority regarding the illegitimacy of sanctions incorrectly imposed under one rule when they should have been imposed under another, the lack of any substantial effect of sanctioning Sheesley under Rule 11(c)(1) rather than Rule 26, and the reporter's notes to Rule 26(g) that state Rule 26 incorporates Rule 11. On that final point, the court iterated that the reporter's notes were legally binding absent a contrary ruling from the Virgin Islands Supreme Court.

¶11     In addition to its ruling on Sheesley's motion to reconsider, the court entered orders on February 13, 2020 that disposed of all pending issues decided at the January 23, 2020 hearing.

¶12     On February 24, 2020, Sheesley perfected the instant appeal.

## II.     JURISDICTION

¶13    "The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees, and final orders of the Superior Court." 4 V.I.C. § 32(a). "An order that disposes of all claims submitted to the Superior Court is considered final for the purposes of appeal." *Jung v. Ruiz*, 59 V.I. 1050, 1057 (2013) (citing *Matthew v. Herman*, 56 V.I. 674, 677 (2012)). In this case, a jury trial resulted in a verdict for plaintiff on which judgment was entered on November 12, 2019. Numerous post-trial matters were raised by the parties. Because the Superior Court's February 13, 2020 orders disposed of all claims submitted for adjudication, the February 13, 2020 order denying Sheesley's motion to reconsider is final, and we exercise jurisdiction over Sheesley's appeal. *See In re Le Blanc*, 49 V.I. 508, 519 (V.I. 2008) (explaining that an order sanctioning an attorney cannot remain completely separate from the merits of the case and therefore it is not immediately appealable; rather, a sanctions order is effectively reviewed on appeal from a final judgment in the underlying litigation).

## III.    STANDARD OF REVIEW

¶14    We review the trial court's factual findings for clear error and exercise plenary review over its legal determinations. *Thomas v. People*, 63 V.I. 595, 602-03 (V.I. 2015) (citing *Simmonds v. People*, 53 V.I. 549, 555 (V.I. 2010)). "The appropriate standard of review for the denial of a motion to reconsider is generally abuse of discretion but, if the trial court's denial was based upon the interpretation of a legal precept, then the review is plenary." *Martin v. Martin*, 58 V.I. 620, 625 (V.I. 2013) (citation omitted). Finally, "it is well-established that the Superior Court's decision to impose, or decline to impose, a sanction . . . is typically reviewed only for abuse of discretion. . . . However, when such a decision is based on the Superior Court's application of law, this Court reviews the issue de novo." *In re Rohn*, 67 V.I. 764, 767 (V.I. 2017) (citations omitted).

## IV. DISCUSSION

### A. Sheesley's Direct Challenge to the Imposition of Sanctions

¶15 Although we discuss the Superior Court's denial of Sheesley's motion to reconsider the imposition of sanctions in the latter portion of this opinion, we first probe the merits of Sheesley's initial challenge to the Superior Court's imposition of sanctions under V.I. R. CIV. P. 11. Specifically, we evaluate the merits of the Superior Court's Rule 11 sanctions determination because Sheesley filed his notice of appeal on February 24, 2020, which was within the thirty-day requirement enumerated in this Court's rules for filing a notice of appeal. V.I. R. APP. P. 5 states that an appeal must be filed within thirty days after the Superior Court issues a final, appealable order. More succinctly, Sheesley had to file his appeal within thirty days of the Superior Court's January 28, 2020 order that imposed Rule 11 sanctions[2, 3] against him. Accordingly, because he did so, Sheesley preserved for appellate review a direct challenge to the Superior Court's imposition of Rule 11 sanctions.

¶16 In his appellate brief, Sheesley argues that the Superior Court abused its discretion because it inadvertently imposed sanctions under Rule 11 rather than Rule 26 for Sheesley's failure to properly evaluate Antonio Maysonet's knowledge of matters germane to this case. Appellant's Br. 2. Sheesley further contends that Maysonet, as a World Fresh Market Rule 30(b)(6)[4] witness, was

---

[2] Pursuant to V.I. R. APP. P. 5, a notice of appeal must be filed within thirty days after the date of entry of the judgment or order being appealed.

[3] Although an order imposing sanctions is not a final order on which an appeal can be initiated, *In re Rohn*, 67 V.I. 764, 767 (V.I. 2017), the underlying case in this matter had already been decided on November 12, 2019, which was before the Superior Court entered its January 28, 2020 sanctions order. Thus, we may exercise review of Sheesley's appeal.

[4] "(1) Notice in General. A party who wants to depose a person by oral questions must give reasonable written notice to every other party. The notice must state the time and place of the deposition and, if known, the deponent's name and address. If the name is unknown, the notice must provide a general description sufficient to identify the person or the particular class or group to which the person belongs." V.I. R. CIV. P. 30(b)(1).

not required to have personal knowledge of the case. *Id.* at 3. Sheesley is correct that Rule 30(b)(6) witnesses do not need personal knowledge of case facts to be deposed, *Davis v. BP Consulting VI, LLC*, No. ST-16-CV-656, 2019 WL 162848, at *5 (V.I. Super. 2019). However, we are unpersuaded that the Superior Court's error, if any, in sanctioning Sheesley under Rule 11 rather than Rule 26 was detrimental to the case or prejudicial to Sheesley. We believe Sheesley failed to perform a reasonable inquiry of Maysonet's knowledge regarding relevant case facts, even though a reasonable inquiry is required by both rules. *See In re Tutu Wells Contamination Litigation*, 31, V.I. 250, 280 (V.I. 1995); *Project 74 Allentown, Inc. v. Frost*, 143 F.R.D. 77, 84 (E.D. Pa. 1992) ("The standards for granting a motion for Rule 26(g) sanctions are the same standards for granting a motion for sanctions pursuant to Rule 11."). It is well established that "[i]n a civil case, an error is harmless if it is highly probable that it did not affect the complaining party's substantial rights." *Mendez v. Gov't of the V.I.*, 56 V.I. 194, 205 (V.I. 2012) (quoting *Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 329 (3d Cir. 2002)). Accordingly, since the same standards apply to the consideration of sanctions under both Rule 11 and Rule 26, we conclude that any error committed by the Superior Court's error in sanctioning Sheesley pursuant to Rule 11 instead of Rule 26 is harmless.

¶17  Generally, V.I. R. CIV. P. 11 states that a litigant or counsel who files a signed document with the court certifies that the person did so after a reasonable inquiry regarding the legitimacy of the assertions in the document. Specifically, Rule 11(b)[5] itemizes various representations that a

---

[5]  "Representations to the Court. By presenting to the court a pleading, written motion, or other paper — an attorney or self-represented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: 1) it is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; 2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; 3) the factual contentions have evidentiary support or, if specifically so

person makes to the court when he files a document, including that the document's submission was for a proper purpose, that the claims and defenses in the document are warranted by existing law or a satisfactory reason to amend contemporary law, and that the document's factual contentions are supported by evidence or will have evidentiary support upon further investigation.[6] However, if the individual who filed the document with the court failed to adhere to Rule 11's parameters, Rule 11(c)[7] enables the imposition of sanctions against the offending party. Lastly, although Rule 11(c) allows for imposition of sanctions based on misrepresentations of the assertions in a court-filed document, Rule 11(d)[8] explicitly states that Rule 11 is inapplicable for discovery violations.

---

identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and 4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information. 5) that the applicable Virgin Islands law has been cited, including authority for and against the positions being advocated by the party." V. I. R. CIV. P. 11(b).

[6] In addition to the grounds already delineated, Rule 11 also states that an attorney or party stipulates that his filings cite applicable Virgin Islands law and denials of particular facts have evidentiary support or are rooted on reasonable beliefs or insufficient information.

[7] "1. In General. If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee. 2) Motions for Sanctions. A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion. 3) On the Court's Initiative. On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not been violated Rule 11(b). 4) Nature of a Sanction. A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fee and other expenses directly resulting from the violation. . . ." V. I. R. CIV. P. 11(c).

[8] "Inapplicability to Discovery. This rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37." V. I. R. CIV. P. 11(d).

¶18    V.I. R. CIV. P. 26 governs discovery. Pertinently, subsection (a)(1)(A),[9] which explains initial disclosures; subsection (e)(1)(A),[10] which involves supplemental disclosures and responses; and subsections (g)(1)(A)[11] as well as (g)(3),[12] which discusses permissible sanctions for violations of Rule 26, are implicated in this case. Importantly, like Rule 11, Rule 26 has a reasonable inquiry requirement for individuals submitting signed discovery disclosures or discovery requests to the court. Rule 26's reasonable inquiry standard compels the signor of discovery documents to ensure that a disclosure is correct and the request is submitted for a proper purpose, is supported by existing law or an argument to amend current law, and is not unduly burdensome.

¶19    As stated above, the test to decide whether sanctions should be imposed under Rule 11 or Rule 26 is one of a reasonable inquiry. "[T]he reasonable inquiry standard 'is an objective standard.'" *Books are Fun, Ltd. v. Rosebrough*, 239 F.R.D. 532, 551 (S.D. Iowa 2007) (citations omitted). Moreover, it is well established that "[R]ule 26(g) contains sanction provisions parallel to those found in Rule 11. The primary distinction is that Rule 26 applies exclusively to discovery

---

[9]  "Initial Disclosure. (A) In General. Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, to provide to the other parties: (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment . . ." V. I. R. CIV. P. 26(a)(1)(A)(i).

[10]  "In General. A party who has made a disclosure under Rule 26(a) – or who has responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response: A) in a timely manner if the party learns that in some material respect the disclosure is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . ." V. I. R. CIV. P. 26(e)(1)(A).

[11]  "1) Signature Required; Effect of Signature. Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name – or by the party personally, if self-represented – and must state the signer's address, email address, and telephone number. By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry: A) with respect to the disclosure, it is complete and correct as of the time it is made . . ." V. I. R. CIV. P. 26(g)(1)(A).

[12]  "3) Sanction for Improper Certification. If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf of the signer was acting, or both. The sanction may include an order to pay reasonable expenses, including attorney's fees, caused by the violation. V. I. R. CIV. P. 26(g)(3).

requests and responses, while Rule 11 applies to any "paper, pleading, or motion [filed with the court]." *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 555 (N.D. Cal. 1987). Therefore, Rule 11 requires an attorney to certify that the factual contentions in a declaration submitted to the court have evidentiary support to the best of the person's knowledge formed after a reasonable inquiry. *Omega SA v. 375 Canal, LLC*, 324 F.R.D. 47, 54 (S.D.N.Y. 2018). Essentially, Rule 11 emphasizes the need for a pre-filing inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule. *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 892 F.2d 802, 809 (9th Cir. 1989). *See Smith v. Psychiatric Sols., Inc.*, 864 F.Supp.2d 1241, 1274 (N.D. Fla. 2012) ("Rule 11 requires litigants to make a reasonable inquiry into the law and facts before making legal and factual contentions in a pleading, motion, or other paper presented to the court.").

## B. Imposition of Sanctions

¶20    To impose Rule 26 sanctions against Sheesley, the Superior Court had to find that he signed the supplemental disclosure for Antonio Maysonet as a witness without performing a reasonable inquiry about whether Maysonet had knowledge of World Fresh's claims and defenses. J.A. Vol. II, Part 1 560. *See supra* notes 6-7.

¶21    In *In re Rohn*, we held that awarding sanctions on grounds other than those employed by the Superior Court was unfounded because the decision whether to sanction or not to sanction is generally within the trial court's province and affirming a sanctions award on alternate grounds tends to invade the trial court's authority. *Id.* at 770-71. However, this Court has routinely articulated that a ruling may be affirmed on appeal if the Court reaches the same result as the Superior Court, albeit on different grounds. *See e.g., Penn v. Mosley*, 67 V.I. 879, 897 (V.I. 2017).

¶22     Here, the Superior Court made sufficient factual findings at the January 23, 2020 hearing

to support and justify a sanctions award against Sheesley for unjustifiably disclosing Maysonet as

a witness who had knowledge of World Fresh's claims or defenses. At the hearing, the court

reviewed Maysonet's October 29, 2019 deposition testimony. At the deposition, Maysonet said

that he did not know Palermo, that he did not know of Palermo's suit against World Fresh, that he

did not draft the September 2, 2008 incident report, that he first learned of Palermo's suit the day

before the deposition when Sheesley emailed him, and that he spoke to Sheesley for the first time

about Palermo's suit 45 minutes before the deposition began. J.A. Vol. II, Part 1 497-99, 507-10.[13,]

[14, 15] In deciding to sanction Sheesley, the court reasoned that if Sheesley knew of Maysonet's

---

[13] Q- Are you aware of a case going to trial called Palermo versus World Fresh Market?
A- If I am aware? No.
Q- You don't know that the case is going to trial?
A- No. I know right now.
Q- You know what?
A- I know right now, one hour ago.
Q- Prior to one hour ago, did anyone ever ask you what you knew about Palermo's accident?
A- No.
Q- Do you know Ms. Palermo?
A- No.
Q- Can you describe Ms. Palermo?
A- No.
Q- Do you recall a time on September 1, 2008 that a woman slipped in some water on the floor that had come from a cooler?
A- No.
Q- Do you know whether or not you ever took the report in the case?
A- No.
Q- Do you remember a Hispanic, that spoke Spanish that reported to you that she had hurt her ankle when she fell in the water?
A- No.
Antonio Maysonet's October 29, 2019 Deposition (J.A. Vol. II, Part 1 497-98)
[14] Q- Do you know whether or not the cooler, on September 1, 2008, was damaged?
A- I tell you I don't know nothing about September 1. I don't recall.
Q- Do you have any idea if there was water on the floor on September 1, 2008?
A- I tell you I don't remember nothing about September 1.
Q- Okay. Do you know whether or not on September 1, 2008 there was a wet floor sign there?
A- I don't remember nothing [about] September 1, 2008.
Q- Do you have any knowledge of any wet floor signs put [on] Pueblo's floors on September 1, 2008?
A- I don't remember.
*Id.* (J.A. Vol. II, Part 1 502-03)
[15] Q- Have you ever seen exhibit 1 before?

faulty memory before submitting the Rule 26 supplemental disclosure, he blatantly misrepresented

to the court and opposing counsel the limited extent of Maysonet's knowledge about the case by

not only filing the disclosure document but also by his advocacy at the October 28, 2019 hearing,

where he affirmed that Maysonet had pertinent information germane to the litigation. Additionally,

the court further surmised that if Sheesley did not know of Maysonet's poor recollection before

---

A- Yes.
Q- When was the first time you saw it?
A- About 45 minutes ago.
Q- Okay. Is of this your handwriting?
A- No.
Q- And is your signature on the document?
A- No.
Q- Do you know whose signature it is on the document?
A- I don't know.
Q- Before 45 minutes ago, had you ever seen this document before?
A- No.
Q- Does this document refresh your recollection about Ms. Palermo's fall?
A- No.
Q- Do you know who Joel Cruz is?
A- No.
Q- Have you seen any other documents related to Ms. Palermo's fall?
A- Yes. I see the deposition or something I was reading more or less 45 minutes ago.
Q- So when did you first learn your deposition was going to be taken today?
A- Yesterday.
Q- Yesterday at what time?
A- I don't remember.
Q- Morning? Afternoon? Evening?
A- I don't remember.
Q- Who told you your deposition was going to be taken?
A- I saw it in an email.
Q- Who sent the email?
A- Mr. Sheesley.
Q- Had you ever spoken to Mr. Sheesley before that?
A- About this, no.
Q- Had you ever had emails with Mr. Sheesley about Palermo before?
A- I don't remember.
Q- Do you have any recollection about getting an email from Mr. Sheesley prior to yesterday about Palermo?
A- I don't remember.
Q- Do you have any recollection of getting an email from Mr. Sheesley about leaks in the roof before yesterday?
A- No. I don't remember.
Q- Have you ever talked to Mr. Coppin about Palermo's incident?
A- No. I don't remember.
Q- Have you spoken to Mr. Coppin recently about Palermo's incident?
A- No. I don't remember.
*Id.* (J.A. Vol. II, Part 1 506-09)

executing and filing the supplemental disclosure, he failed to engage in a reasonable inquiry of Maysonet's knowledge as Rule 26 demands and thereby wasted the court's precious resources. Essentially, the court determined that Sheesley was mendacious by claiming at the October 28, 2019 hearing that Maysonet had knowledge about the litigation when Sheesley should have known he did not. Similarly, Sheesley's mendacity was further displayed by his filing of the signed supplemental disclosure which required Sheesley to certify that he engaged in a reasonable inquiry to ascertain the extent of Maysonet's knowledge about the litigation which, according to Maysonet, did not occur until 45 minutes before the October 29, 2019 deposition. Consequently, the Superior Court's decision to sanction Sheesley was not only justified, but compelling in these circumstances considering the need to conserve scarce judicial resources. Accordingly, we find the Superior Court did not abuse its discretion in sanctioning Sheesley and affirm sanctions under Rule 26.

¶23 Furthermore, we fail to perceive a need to remand the case to the Superior Court so it can make factual findings concerning whether Sheesley's failure to comply with the parameters of Rule 26 was substantially justified or harmless. As stated above, discovery sanctions pursuant to Rule 26 must be imposed unless the violation was substantially justified or if it was harmless under the circumstances. Under Rule 26(g), substantial justification is established if the violation arose from a genuine dispute concerning compliance or the violation was harmless. *Davis v. Varlack Ventures, Inc.*, 59 V.I. 229, 236 (V.I. 2013). To ascertain whether the violation was harmless, this Court has delineated several factors that the Superior Court should assess including the prejudice or surprise to the opposing party, the ability of the party to cure the prejudice, the likelihood of disruption at trial, and the bad faith or willfulness of the violating party. *Id.* at 237.

¶24    Here, the record does not disclose any substantial justification by which Sheesley's Rule 26 sanctions should be negated. Rule 26 required Sheesley to perform a preliminary assessment of Maysonet's knowledge. If a genuine dispute later materialized about whether Sheesley adequately conducted that evaluation, then Sheesley could assert substantial justification as a defense against the imposition of Rule 26 sanctions. However, Sheesley did not test the veracity of Maysonet's knowledge by performing a reasonable inquiry. Instead, Sheesley only asserted that Palermo and de la Cruz both stated they spoke to Maysonet on the day of Palermo's accident and again on the day after the accident. At the October 28, 2019 in-chambers conference, Sheesley also represented that he filed the Rule 26 disclosure for Maysonet out of an abundance of caution. Apparently, Sheesley seemingly only disclosed Maysonet as a potential witness because Palermo and de la Cruz stated they had spoken to him. However, at the in-chambers conference, Rohn identified testimony from de la Cruz's deposition that she did not really know if she and Palermo actually spoke with Maysonet or another World Fresh Market employee whose name was also Tony. J.A. Vol. II, Part 1 472.

¶25    Regardless, if Sheesley had performed a reasonable inquiry regarding Maysonet's knowledge, he would have known that Maysonet did not have any information germane to the litigation. Essentially, Sheesley cannot claim he was substantially justified for his failure to know the extent of Maysonet's knowledge and thereby assert an alleged genuine dispute to comply with Rule 26 because he did not conduct a preliminary investigation of Maysonet's knowledge, which Rule 26 demands. Therefore, we conclude Sheesley was not substantially justified for failing to perform a reasonable inquiry regarding Maysonet's knowledge.

¶26 Moreover, Sheesley cannot assert that his failure to perform a reasonable inquiry of Maysonet's knowledge was harmless. At the October 28, 2019 hearing, Rohn was genuinely surprised that Sheesley filed a Rule 26 disclosure for Maysonet because several World Fresh Market deponents had testified that Maysonet was not at the Golden Rock store on the day of Palermo's accident. Similarly, Maysonet's Rule 26 disclosure represented prejudice to the plaintiff because the plaintiff had to pay the costs to depose Maysonet. Although Sheesley could have cured the prejudice by conducting a reasonable inquiry of Maysonet's knowledge prior to filing the Rule 26 disclosure and informing the court and counsel that Maysonet lacked knowledge of the case facts, he did not do so. Without speaking to Maysonet before filing the Rule 26 disclosure, Sheesley exacerbated the situation by claiming that Maysonet had relevant information about the case which he obviously lacked. Additionally, although Maysonet's trial testimony may not have been extremely disruptive to the trial process if he had testified at trial, it definitely could have prolonged the case unnecessarily, thereby wasting scarce judicial resources. Finally, Sheesley's failure to perform a reasonable inquiry of Maysonet's knowledge definitely demonstrated that Sheesley acted in derogation of his duty to perform a reasonable inquiry when he filed Maysonet's Rule 26 disclosure. By filing the Rule 26 disclosure, Sheesley intimated that Maysonet had discoverable information which Sheesley had verified as a result of performing a reasonable inquiry. This filing led directly to plaintiff's counsel deposing Maysonet on October 29, 2019, thereby incurring additional costs in litigating plaintiff's claims and unnecessarily delaying their resolution. Accordingly, we conclude that Sheesley's failure to conduct a reasonable inquiry of Maysonet's knowledge was not harmless.

## V.    CONCLUSION

¶27    To conclude, we affirm the Superior Court's denial of Sheesley's motion to reconsider. Moreover, we affirm the Superior Court's imposition of sanctions because Sheesley was afforded ample opportunity to address the issue of whether he made a reasonable inquiry concerning Maysonet's knowledge before filing the supplemental Rule 26 disclosure on October 15, 2019. Importantly, while the Superior Court cited Rule 11 as the basis for its sanctions ruling, the Superior Court, in fact, considered the correct reasonable inquiry requirement embodied in Rule 26, and it made the required finding that Sheesley's certification under Rule 26 was sanctionable pursuant to that standard. Its use of Rule 11 as the basis for its sanctions ruling, rather than Rule 26, was therefore harmless.

**Dated this 29th day of January 2025**

BY THE COURT:

**IVE ARLINGTON SWAN**
Associate Justice

**ATTEST:**
**VERONICA J. HANDY, ESQ.**
**Clerk of the Court**

**By:** /s/ Jahkyda Coakley
         **Deputy Clerk II**

**Dated:** January 29, 2025